**Marisa A. SODERSTRUM,**
Plaintiff-Appellant,
Cross-Appellee,

v.

**TOWN OF GRAND ISLE,**
Defendant-Appellee,
Cross-Appellant.

No. 89-3472.

United States Court of Appeals,
Fifth Circuit.

March 6, 1991.

Louis L. Robein, Jr., Metairie, La., for plaintiff-appellant, cross-appellee.

Daniel R. Martiny, Metairie, La., for Harry Lee.

Raymond L. Hess, New Orleans, La., Steven Dow Oliver, and Delbert G. Tally, Windhorst, Gaudry, Talley & Ranson, Harvey, La., for Town of Grand Isle.

Before WISDOM, GEE, and HIGGINBOTHAM, Circuit Judges.*

* This opinion was concurred in by Judge Gee prior to his resignation from the Court on February 1, 1991.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Marisa Soderstrum brings this section 1983 action against the Town of Grand Isle, Louisiana. She alleges that the decision of the newly elected officials not to reappoint her to her old position of secretary to the chief of police violated her First Amendment and due process rights. We are persuaded that Soderstrum received due process and thus decline to decide whether due process was required; we are also persuaded that given the confidential relationship between the chief and his secretary the chief was entitled to Soderstrum's political loyalty and that Soderstrum's First Amendment rights to support the chief's political opponent did not include job protection. We affirm the judgment for defendants entered on a jury verdict.

I.

In 1976 Ernest Lafont, the chief of police of the Town of Grand Isle, Louisiana, recommended to the board of aldermen and the mayor that his nephew's wife, Marisa Soderstrum, be hired as his secretary. The appointment followed and Ms. Soderstrum served in the police department in various capacities from 1976 to 1988. She worked as Lafont's personal secretary, as a jailer, as a dispatcher, and as clerk of the Mayor's court. Occasionally she was called on to supervise other police-department personnel. She even testified that at one point the chief promoted her to lieutenant to enable her to "oversee everyone else." In her secretarial role, she did all Lafont's typing and had access to his personal files.

In April 1988, after serving as Grand Isle chief of police for twenty years, Lafont lost his bid for re-election to Roscoe Besson, Jr., a welder by trade and a newcomer to politics. The voters also chose a new mayor and five new aldermen. When the new city government took office on July 1st, Besson recommended various persons for positions within the police department. The board of aldermen and the mayor approved the rec-

ommendations. Under Louisiana law, the board of aldermen and the mayor share the power to hire and fire city employees, including employees of the police department, and the police chief must recommend appointments to the board and mayor for approval. La.Rev.Stat.Ann. §§ 33:362(A)(3), 33:404(A)(1), and 33:423 (West 1988); *see also City of Opelousas v. Scrantz*, 360 So.2d 1379, 1383 (La.Ct.App.), *writ denied*, 363 So.2d 535 (1978). The chief of police acting alone has neither the power to hire nor the power to fire police-department personnel. *Id.; see also* Op. Att'y Gen., No. 87–682 (La.1988) and No. 86–589 (La.1986).[1]

Soderstrum with others [2] filed a section 1983 action alleging that Chief Besson, Mayor Valence, and the Town of Grand Isle violated Soderstrum's constitutional rights by deciding not to continue her employ. She alleged first that a town ordinance [3] gave her a property interest in her position and that, nonetheless, she was terminated without notice or a hearing; thus the defendants deprived her of due process. She alleged further that she was terminated because of her political affiliation—in particular, because of her close relationship to former boss Lafont; thus the defendants violated her First–Amendment right to freedom of association.

The district court submitted the case to the jury in the form of special interrogatories. The jury found (1) that neither Chief Besson nor the Town of Grand Isle deprived Soderstrum of due process; (2) that Chief Besson (but not Grand Isle) terminated Soderstrum for "political reasons"; and (3) that Soderstrum occupied a "policy making position" that required "complete loyalty." Based on these interrogatories, the district judge entered judgment for the defendants. He then denied the plaintiffs' motion for a judgment notwithstanding the verdict and for a new trial. On appeal Soderstrum argues that the evidence does not support the findings that she was *not* deprived of due process and that she *was* a policymaker. She argues that, therefore, the district court erred in denying her motions for a j.n.o.v. and for a new trial. The Town of Grand Isle cross-appeals arguing that the evidence does not support the finding that Chief Besson fired Soderstrum for political reasons.[4] Additionally, defendants contend that the district court abused its discretion by refusing to award them the costs of taking certain depositions and of obtaining two sworn statements.

## II.

Soderstrum first claims that she was deprived of a "property interest" in her job

---

1. Grand Isle argues further that certain language in the Louisiana statute apparently removes the police department from the general supervisory authority of the mayor and therefore that the police chief may hire and fire independently. La.Rev.Stat.Ann. § 33:404(A)(1) (West 1988). This Louisiana state-law question, however, is not relevant here: Chief Besson, together with the new mayor and the new board, effectively fired Marisa Soderstrum.

2. Because their names did not appear in the Notice of Appeal, we dismissed the appeals of Maurice A. Terrebonne, Jr., Mary E. White, Alice A. O'Keefe, and Gerald Soderstrum in an order dated May 1, 1990.

3. The district court read the two relevant provisions of the ordinance to the jury:

   No. 5. An unsatisfactory employee shall be notified by his supervisor and with knowledge of the Mayor how his work is deficient and what he must do if his work is to be satisfactory. If the employee's work continues to be below standard, the Mayor will demote or dismiss the employee pursuant to R.S. 33:404(A)(3).

   No. 6. Prior to dismissal or termination if an employee, the employee shall be notified by the Mayor or authorized department head either verbally or in writing of the reason or reasons for his/her dismissal or termination. The employee shall further be advised of the evidence on which the dismissal of termination is based. The employee shall also be given an opportunity to respond either verbally or in writing prior to dismissal or termination directly to the Mayor.

   Town of Grand Isle, Ordinance No. 466, effective date April 24, 1986. Because we conclude that Soderstrum received due process, we need not reach the question whether Ordinance No. 466 applies to Soderstrum.

4. Initially, Mayor Valence and Chief Besson cross-appealed as well. However, because their names were not included in the Notice of Cross–Appeal, we dismissed their cross-appeal in an order dated July 20, 1990.

with the police department without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests in continued employment "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Soderstrum argues that she had a property interest in her job with the police department because of a Grand Isle ordinance providing that before city employees may be fired certain procedures must be followed. *See supra* note 3. Thus she maintains that Chief Besson and the Town should have afforded her a hearing consistent with the procedures set out in the ordinance. *Id.* at 569, 92 S.Ct. at 2705; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Johnson v. Southwest Miss. Regional Med. Center*, 878 F.2d 856, 858 (5th Cir.1989). She further alleges not only that Besson and the Town failed to follow the appropriate termination procedures but also that they gave her no opportunity to be heard. Thus, she argues, the evidence does not support the jury's finding as to her due process claim.

■ Because we find that Soderstrum received sufficient notice and opportunity to be heard, we need not delve into the prickly question whether the Grand Isle ordinance is applicable or created a property interest.[5] The existence and scope of a property interest is a question of state law but the content of the process that is due is a matter of federal constitutional law. *Loudermill*, 470 U.S. 532, 105 S.Ct. at 1493, 84 L.Ed.2d 494 (1985). The due process clause requires an employer to provide "some kind of hearing" before discharging an employee who has a property interest in continued employment. *Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705. The essential elements of due process are notice and an opportunity to respond, *Loudermill*, 105 S.Ct. at 1495, and "informal procedures will suffice," *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970).[6]

If Soderstrum had a property interest, and we do not decide that question, it is plain that she was given due process in the form both of notice that her job was in danger and an opportunity to be heard. Soderstrum testified that Chief Lafont told all police department personnel two days after the election that if they wanted to keep their jobs they should apply to Chief Besson. Soderstrum at that time told Lafont that she would not work under Besson. Lafont relayed this message to Besson, who thereafter understandably assumed Soderstrum had no interest in the job. During the time between the meeting at which Soderstrum learned that her job was in jeopardy and the date on which the new administration took office, Soderstrum never went to Besson to reapply for her job; instead she went on vacation, returned only to clean out her desk, and submitted a job application to the Mayor's office regarding a completely different position. Moreover, both Soderstrum and Besson testified that the two of them had a conversation in late June in which he told her that she was off the payroll on July 1st. The reason, Besson admitted to Soderstrum, was that he did not trust her because of her close relationship with Lafont, who remained Besson's political enemy. According to Soderstrum's testimony, she responded that "if he couldn't trust [her, she] didn't want to be there."

Based on these facts, it appears Soderstrum had ample notice and ample opportunity to be heard. Thus we affirm the jury's finding that neither Besson nor the Town

---

**5.** Both sides contest the applicability of Grand Isle Ordinance No. 466 to this case. We decline to decide the question. It is not apparent that the jury relied on the ordinance in making its findings and we decide the due process issue without reference to the ordinance.

**6.** Given that adequate notice and opportunity to respond are the only requirements that due process here imposes, we find no error in the district court's instruction to the jury on this issue:

> However, the mere fact that these particular procedures were not followed is not sufficient for you to find a deprivation of a constitutional right so long as you conclude that plaintiffs were advised their jobs would be terminated and were given some sort of opportunity to respond to those charges.

of Grand Isle deprived Soderstrum of property without due process of law. We are left with whether Besson's motivation for not reappointing Soderstrum renders that employment decision unconstitutional.

## III.

The Supreme Court has stated that

even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech.

*Perry v. Sindermann,* 408 U.S. 593, 597–99, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). Ms. Soderstrum alleges that, by firing her because of her political affiliation with the outgoing Lafont administration, Chief Besson and the Town of Grand Isle violated her First–Amendment right to freedom of association. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court

decided that a newly elected Democratic sheriff could not constitutionally engage in the patronage practice of replacing certain office staff with members of his own party "when the existing employees lack or fail to obtain requisite support from, or fail to affiliate with, that party." [citation omitted] The plurality explained that conditioning public employment on the provision of support for the favored political party "unquestionably inhibits protected belief and association."

*Id.* at 351, 359, 373, 375, 96 S.Ct. at 2678–79, 2682–83, 2689–90, 2690, *quoted in Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 2734, 111 L.Ed.2d 52 (1990) (citations omitted). Four years later, in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the court held

that the First Amendment prohibited a newly appointed public defender, who

was a Democrat, from discharging assistant public defenders because they did not have the support of the Democratic Party. The Court rejected an attempt to distinguish the case from *Elrod,* deciding that it was immaterial whether the public defender had attempted to coerce employees to change political parties or had only dismissed them on the basis of their private political beliefs.... [In sum,] [t]o prevail, we concluded, public employees need show only that they were discharged because they were not affiliated with or sponsored by the Democratic Party.

*Rutan* 110 S.Ct. at 2735.

*Branti*'s most important contribution for the purposes of this case, however, is that it refined and made explicit *Elrod*'s policymaker/confidential-employee exception to the otherwise categorical prohibition against patronage employment decisions. *Elrod,* 427 U.S. at 367–68, 96 S.Ct. at 2686–87 (plurality), and 375, 96 S.Ct. at 2690 (Stewart, J., concurring in the judgment). In *Branti* the Court recognized that

party affiliation may be an acceptable requirement for some types of government employment. Thus, if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency.

.    .    .    .    .

In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Id.,* 445 U.S. at 517–18, 100 S.Ct. at 1294–95. The Court went on to hold that an assistant public defender is not a policymaker or confidential employee.

In reviewing the sufficiency of the evidence supporting the jury's findings in this case, we are aware of our constitutional

responsibility to examine the facts for ourselves to determine whether First Amendment rights have been infringed. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1692 n. 10, 75 L.Ed.2d 708 (1983) (quoting *Pennekamp v. Florida*, 328 U.S. 331, 335, 66 S.Ct. 1029, 1031, 90 L.Ed. 1295 (1946)). As earlier mentioned, the jury found that Chief Besson did terminate Soderstrum's employment for "political reasons." It went on to find, however, that Soderstrum, as secretary to the chief of police, was in a "policy making position" that required "complete loyalty." Accordingly, the district court entered judgment in their favor on the First Amendment claim as well. On cross-appeal the Town of Grand Isle contends that the evidence does not support the finding as to the reasons for Soderstrum's termination. The argument is in the alternative: Either Soderstrum was never fired (rather, she failed to reapply) or, if she was fired, it was for practical and not political reasons.

Grand Isle cites *McBee v. Jim Hogg County, Tex.*, 730 F.2d 1009 (5th Cir.1984) (en banc) and *Simmons v. Lyons*, 746 F.2d 265 (5th Cir.1984) to support its argument that the First Amendment does not entitle Soderstrum to her old job with the police department given that she failed to submit an application for the position. According to these decisions, grounded in state law, a sheriff's deputies are the appointees of the sheriff; they serve at his pleasure. And if a new sheriff is elected, he must reappoint and recommission the old deputies in order for them to retain their positions.

■ Even if we assume that Soderstrum needed to reapply to Chief Besson to retain her job, the manner in which Besson denied her the reappointment creates *Elrod/Branti* First Amendment issues that did not exist in *McBee* or in *Simmons*.[7] For instance, in *Simmons*, which involved Louisiana law, the sheriff-elect never contacted deputy sheriffs to see if they were interested in staying on. Indeed, the deputies "never received official word that they should apply if they wished reappointment." Instead they refrained from reapplying because of the general, vague "understanding" that those who campaigned for the outgoing sheriff would not be rehired. The case before us is markedly different. Soon after the election, Lafont himself officially notified the police department employees that if they wanted to work with the new administration they needed to put in applications. Then, a few days before taking office, Besson told Soderstrum explicitly that she would not be able to keep her job and why. Besson knew this was not an idle threat, as Besson had the full support of the new mayor and board. Thus Besson left no doubt that Soderstrum was not going to be his secretary. At the very least, Chief Besson and the city made an employment decision adverse to Soderstrum's interest, and the only real question is whether the decision was made on constitutionally permissible grounds. *Perry*, 408 U.S. at 597, 92 S.Ct. at 2697.

The evidence is unambiguous that Besson refrained from reappointing Soderstrum because of her close relationship with the outgoing chief of police, who might run against Besson in the next election. Not everyone who worked or campaigned for Lafont lost his job. Soderstrum did because of her links to Lafont and because the new chief doubted her loyalty. This evidence supports the jury's finding that Soderstrum was terminated for political reasons.

■ The case reduces, then, to the question whether Soderstrum served in a position of confidence requiring complete loyalty to the police chief. In the Lafont police department Soderstrum served as dispatcher, jailer, and clerk of the Mayor's court. More important, she was Lafont's personal secretary. In that role she did his typing and filing, and, unlike other department personnel, she was privy to certain confidential files and documents. Several others who worked in the Lafont police depart-

7. But as we stated in *McBee*, whether an employee is technically fired or just not rehired is irrelevant. 730 F.2d at 1015 (citing *Branti*, 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6; and *Sindermann*, 408 U.S. at 597–99, 92 S.Ct. at 2697–98 (1972)).

ment were in fact recommended for reappointment by Besson. None of them, however, served in the same confidential role as Ms. Soderstrum did. Nor, apparently, did they express an unwillingness to work for Besson. Based on these facts, and based on a realistic understanding of the confidential relationship between secretaries and their bosses, we agree with the jury's finding that Soderstrum was a confidential employee. An incoming government official should be able to choose his personal secretary and should not be prevented by the First Amendment from replacing his defeated opponent's secretary and relative, at least when that person, as in this case, has unambiguously expressed her lack of confidence in the incoming official and her unwillingness to work in the new administration. *See generally Stegmaier v. Trammell,* 597 F.2d 1027 (5th Cir.1979) (discussing distinction between policymakers and confidential employees and holding that a public employee occupying a position of confidence, loyalty, and trust may—consistent with the Constitution—be discharged solely on the ground of political affiliations).[8] Because we find that Soderstrum fits the definition of a confidential employee, we need not address whether she was correctly deemed a policymaker as well. Thus we conclude as did the district court that neither Chief Besson nor the Town of Grand Isle violated Ms. Soderstrum's First Amendment rights.[9]

## IV.

■ The defendants appeal the district court's denial of certain litigation costs. The standard of review for denial of costs is clear abuse of discretion. *Nissho–Iwai*

Co., Ltd. v. Occidental Crude Sales, 729 F.2d 1530 (5th Cir.1984) (quoting *Kinnear–Weed Corp. v. Humble Oil & Refining,* 441 F.2d 631, 637 (5th Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971)). As to depositions, a trial judge has great discretion to tax such costs if "all or any part [of the deposition] was 'necessarily obtained for use in the case.'" *Carpa, Inc. v. Ward Foods,* 567 F.2d 1316, 1323 (5th Cir.1978) (quoting 28 U.S.C.A. § 1920(4) (West 1966)), *Carpa overruled on other grounds, Copper Liquor v. Adolph Coors Co.,* 701 F.2d 542, 543 (5th Cir.1983); *see also Nissho–Iwai,* 729 F.2d at 1553 (including above quote from *Carpa*); *United States v. Kolesar,* 313 F.2d 835, 840 (5th Cir.1963). In *Nissho–Iwai* the trial judge "determined that each of the depositions, whether actually admitted at trial or not, was necessarily obtained for use in the case." 729 F.2d at 1553. We affirmed the decision to tax these costs and held that the trial court could, in its discretion, tax the costs of taking a deposition used only to structure questioning. *Id.* (citing the "*Kolesar* rule"). Thus, contrary to one of Besson's arguments, we did not *hold* that depositions used for structuring questioning are always "necessary for use in the case." Rather we held that it is within a trial court's discretion to tax such costs.

The district court denied roughly $1500 of $7,062.10 requested by defendants. The denied costs were for taking four depositions (those of Mr. Lafont, Mr. Marullo, Mr. Lee, and Mr. Ragsdale) and for obtaining two sworn statements (those of Ms. Encalade and Ms. Guidry). The court stated its reasons as follows:

---

**8.** *See generally The Supreme Court, 1975 Term,* 90 Harv.L.Rev. 186, 193–94 (1976):
Certainly elected officials should be permitted to dismiss their predecessor's personal secretaries and a few others who work closely with such officials in positions requiring a relationship of mutual trust. However, the courts should construe the exception narrowly and guard against efforts to invoke it in support of across-the-board dismissals.
*Id.* at 194 & n. 41, *quoted in Trammell,* 597 F.2d at 1038. The case at bar, as mentioned above, does not involve across-the-board dismissals. *Cf. Gonzalez v. Benavides,* 712 F.2d 142, 147–48

(5th Cir.1983) ("There is a governmental interest in securing those unique relationships between certain high level executives and the elected officials at whose grace they serve.").

**9.** *Barrett v. Thomas,* 649 F.2d 1193, 1189–1201 (5th Cir.1981), in which we held that *Elrod* and *Branti* did not apply, is factually distinguishable from this case, because the employee in that case did not hold a position of close confidence and complete trust with respect to his employer. The Supreme Court's decision in *Rutan* is distinguishable on the same grounds.

**142**

[D]efendants seek recovery of costs for depositions of witnesses aligned with the defendants, whose depositions were noticed by the defendants. See Rec.Doc. no. 16 (Lafont and Marullo); Rec.Doc. no. 22 (Lee and Ragsdale); and Rec.Doc. no. 37 (Ragsdale). The Court finds such depositions were not necessary to the defense of this case and did not expedite the trial. Costs in connection with these depositions are denied.

Also, the Court finds defendants have made no showing that the sworn statements in question were necessary for use in trial preparation or that they expedited trial. Accordingly, costs for these statements are denied.

We find no abuse of discretion.

AFFIRMED.