United States Court of Appeals,

Fifth Circuit.

No. 90–5624.

Larry CLICK and Don Falcon, Plaintiffs–Appellants,

v.

Harlon COPELAND, Sheriff and Bexar County, Texas, acting By and Through its county judge Tom Vickers and county commissioners, Defendants–Appellees.

Sept. 1, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before HILL,[1] KING, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Two sheriff's deputies sued the sheriff and the county under § 1983 alleging that their First Amendment rights were violated when the sheriff transferred them to less-desirable positions in retaliation for announcing their candidacy for the sheriff's office. The district court directed a verdict in favor of both the sheriff and the county on grounds that the sheriff was entitled to qualified immunity and that the county was not otherwise liable. We vacate and remand.

I.

During all times relevant to this suit, defendant-appellee Harlon Copeland was Sheriff of Bexar County, and plaintiffs-appellants Larry Click and Tom Falcon were sheriff's deputies. Deputy Click was a civil warrants officer and Deputy Falcon was the chief criminal district court bailiff. Both jobs are classified in the law enforcement section of the sheriff's department, but neither involves policymaking.

Click and Falcon decided to run against Copeland for sheriff. In January 1988, around the day Falcon announced his candidacy, but seven months after Click announced his, Copeland

---

[1]Senior Circuit Judge of the Eleventh Circuit, sitting by designation.

transferred Click and Falcon from their positions in the law enforcement section to positions as jail guards in the detention center. The transfers were to be for an indefinite duration.[2] Although the transfers did not result in a decrease in pay, each man considered his transfer a demotion.

Click and Falcon filed suit in state court against Copeland, in his individual and official capacities, Bexar County, and the county commissioners alleging various state and federal constitutional violations. The federal component of the complaint sought recovery under 42 U.S.C. § 1983 and alleged essentially that defendants took adverse employment actions against the plaintiffs in retaliation for exercising their First Amendment rights. Defendants later removed the suit to federal court.

The case was tried to a jury in February 1990. At the close of plaintiffs' case, the district court granted defendants' motions for directed verdicts. The district court ruled that Sheriff Copeland was entitled to qualified immunity and that the plaintiffs had proffered insufficient evidence to visit liability on the County commissioners. After their motion for a new trial was denied, plaintiffs timely appealed.

II.

Appellants argue first that the district court erred in concluding that Sheriff Copeland is entitled to qualified immunity on those claims against him in his individual capacity.

"A public official is protected by qualified immunity if a reasonable officer would have believed that his actions met constitutional standards. Significantly, the question is not whether the law was settled, viewed abstractly, but whether, measured by an objective standard, a reasonable officer would know that his action is illegal." *Matherne v. Wilson,* 851 F.2d 752, 756 (5th Cir.1988)

---

[2]Copeland ultimately transferred the plaintiffs back to their previous duties in July 1989. This re-transfer took place after plaintiffs sought a preliminary injunction to compel such action, but before the district court ruled on the motion.

(footnote omitted) (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Thus we must decide whether it was "clearly established" in January 1988—when Copeland transferred Click and Falcon—that it was unconstitutional for a sheriff to transfer a nonpolicymaking employee to another section in retaliation for that employee's announced candidacy for sheriff. We divide the analysis into two parts: whether it was clearly established (1) that transfers, as distinguished from discharges, were actionable, and (2) that political activity, as distinguished from political belief, was protected.

A.

Sheriff Copeland contends that it was not clearly established in January 1988 that an intradepartmental transfer, even if retaliatory, could implicate the First Amendment. Copeland argues that it was not until *Matherne v. Wilson,* 851 F.2d 752 (5th Cir.1988), decided several months after the events of this case, that a reasonable sheriff would have known that he could not *discharge* a nonpolicymaking employee because of that employee's political activity. It follows, he suggests, that if the law were this unclear about discharges, then a reasonable sheriff certainly would not know that retaliatory *transfers* were taboo. In essence Copeland concludes that transfers alone do not "deprive" employees of any rights or privileges, a prerequisite to § 1983 liability.[3] The district court agreed with Copeland's analysis. We disagree.

Copeland has provided no authority that supports his discharge/transfer distinction. *Matherne* does not discuss such a distinction. Nor is it accurate to say that *Matherne* created new law when it concluded that an employer could be held liable if he discharged an employee for constitutionally impermissible reasons. In 1968 the Supreme Court concluded that even the *threat* of discharge can

[3]42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

be a potent means of chilling the exercise of constitutional rights. See *Pickering v. Board of Educ.,* 391 U.S. 563, 574, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968). Here, Deputy Click testified to a conversation he had with Sheriff Copeland in December 1987 in which Copeland allegedly said: "After the primary I'm firing the hell out of you." The jury is entitled to find that Copeland threatened Click with discharge. If so, then this alone would implicate Click's First Amendment rights.

But even if no weight is accorded Click's testimony that Copeland threatened to discharge him, there is sufficient evidence of other "deprivations" of plaintiffs' rights under § 1983. "Where ... important conditions of employment are involved, a public employee will not be foreclosed from § 1983 relief merely because the impermissible retaliation did not result in the termination of his employment." *Bickel v. Burkhart,* 632 F.2d 1251, 1255 n. 6 (5th Cir.1980). In *Perry v. Sindermann,* the Supreme Court made clear that

> even though a person has no "right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly.' *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332 [1342], 2 L.Ed.2d 1460 [ (1958) ]. Such interference with constitutional rights is impermissible.

408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

Copeland maintains that his transfer of Click and Falcon to the jail was not a demotion because neither received a decrease in pay; in fact Falcon received a raise. Money alone, however, does not buy happiness. The *Perry* Court spoke of "benefits" generally, not just salary. The evidence adduced at trial strongly supports the proposition that jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section. E.G. Reyes, the assistant director of security at the jail, testified that few people transferred voluntarily from law enforcement to detention positions and that "everybody" views a transfer from detention to law enforcement as a promotion. Andrea

San Miguel, the civil service director, concurred in this assessment. She also testified that she had received eight appeals from those involuntarily transferred from law enforcement to detention, but only one appeal from a transfer the other way. Even Sheriff Copeland testified as to the general preference for law enforcement positions, commenting that "[r]ight this minute every one of [the jail guards] ... would like to be out in a patrol car, or do an investigation, or serving papers."

In short, Click and Falcon's transfers to the jail could be considered demotions, even though they suffered no reduction in salary. See *Reeves v. Claiborne County Bd. of Educ.,* 828 F.2d 1096, 1100 (5th Cir.1987); *Waters v. Chaffin,* 684 F.2d 833, 837 n. 9 (11th Cir.1982) (any discipline implicates First Amendment, including demotion and transfer); *Bennis v. Gable,* 823 F.2d 723, 731 (3d Cir.1987) ("the constitutional violation is not in the harshness of the sanction applied, but in the imposition of any disciplinary action for the exercise of permissible free speech"); see also *Fyfe v. Curlee,* 902 F.2d 401, 404–05 (5th Cir.) (transfer without loss in pay), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990).

Further, there was evidence that Click and Falcon lost seniority rights when they were transferred to detention positions because, at the time, the jail and the law enforcement sections had different seniority systems. The jury was entitled to find that this loss affected opportunities for promotion. In 1980 this circuit recognized that loss of an opportunity for promotion is cognizable under § 1983. See *Bickel v. Burkhart,* 632 F.2d 1251, 1255 & n. 6 (5th Cir.1980).

Copeland relies on *Delong v. United States,* 621 F.2d 618 (4th Cir.1980), for the proposition that employee discipline is actionable only when it amounts to the "substantial equivalent of dismissal." See *id.* at 623; *Parrett v. City of Connersville, Ind.,* 737 F.2d 690, 694 (7th Cir.1984), *cert. dismissed,* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985). Copeland, however, has not demonstrated that the Delong standard was ever the law in this circuit. Indeed at least one of our cases pointed in a contrary direction. In *Bickel,* we held that an employee could establish a

deprivation by showing that his employer altered an "important condition of employment." 632 F.2d at 1255 n. 6. Moreover, the Supreme Court explicitly rejected the Fourth and Seventh Circuits' standard in 1990 and held that an employer violates the First Amendment even when he bases a transfer or an opportunity for promotion on an employee's political affiliation or support. See *Rutan v. Republican Party of Ill.,* 497 U.S. 62, ——, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52, 67 (1990). Although *Rutan* itself was decided after the pertinent events of this case, it drew directly upon three cases that predated these events. See *Perry,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). We therefore reject Copeland's argument.

The law was established clearly enough in this circuit in January 1988 that a reasonable officer should have known that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him. The plaintiffs presented sufficient evidence of a "deprivation" of rights under § 1983 to reach the jury. It follows that the district court erred to the extent it held otherwise.

B.

We turn next to the question of whether, in January 1988, the law was clearly established that a sheriff could not retaliate against an employee for the employee's political activity, as distinguished from the employee's speech or beliefs. More concretely, we must determine whether it was clearly established that Click and Falcon's conduct—running for office against their employer—was protected by the First Amendment.

Courts have long recognized the competing concerns inherent in cases involving the First Amendment rights of public employees. To merit protection, an employee must first demonstrate that his conduct addresses a matter of "public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct.

1684, 1689, 75 L.Ed.2d 708 (1983). This determination is a question of law, to be resolved by the court. *Id.* at 148 n. 7, 103 S.Ct. at 1690 n. 7. If the conduct does not touch a matter of public concern, the inquiry is at an end and a court will not scrutinize the reasons motivating the employer's action. If the employee survives this threshold, however, then the court must strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

Copeland again relies on *Matherne* to support his contention that the law was not clearly established that the First Amendment protects the political activity of public employees. *Matherne,* 851 F.2d 752 (5th Cir.1988). *Matherne* indeed addressed qualified immunity in the context of retaliation against an employee for his political activity. In *Matherne* a sheriff discharged a deputy after discovering the deputy campaigning for the sheriff's opponent. The *Matherne* court relied heavily on *McCormick v. Edwards,* 646 F.2d 173 (5th Cir. Unit A May 1981). In *McCormick,* the court distinguished two Supreme Court cases which had held that nonpolicymaking, nonconfidential government employees could not be discharged solely because of their political beliefs. See *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The *McCormick* court distinguished the right to engage in political activity from the right to hold political beliefs and concluded that the former was outweighed by state interests. *McCormick,* 646 F.2d at 175, 179. The *Matherne* court was bound by the dichotomy created in *McCormick. Matherne,* 851 F.2d at 758. Thus there is some merit to Copeland's reliance on *Matherne.* Indeed, it might seem that Copeland has a stronger case than his counterpart in *Matherne* because there, the employee was campaigning for another opponent, whereas here, Copeland found his political rivals on his own payroll.

Once again, however, Copeland's reliance on *Matherne* falls short. *Matherne*'s qualified

immunity analysis was limited to the law as of July 1983. *Matherne,* 851 F.2d at 757. We are concerned with the law as of January 1988, nearly five years later. Between those dates, this court decided a case that changes the analysis. In *McBee v. Jim Hogg County,* 730 F.2d 1009 (5th Cir.1984), the en banc court re-examined First Amendment freedom in the public employment context in light of the Supreme Court's then-recent decision of *Connick.* Our court concluded that cases involving the balance between employees' First Amendment rights and the employer's right to loyal and efficient service could be placed on a continuum. *McBee,* 730 F.2d at 1014. At one end of the spectrum were *Elrod* and *Branti,* where little weighing was necessary because "no countervailing considerations" appeared against the employees' right to believe as they chose. At the other end lay *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970), and *Duke v. North Texas State Univ.,* 469 F.2d 829 (5th Cir.1972), "where instructors had incited student disturbances that were sufficiently serious to call in question the ability of the authorities to maintain order on campus." *McBee,* 730 F.2d at 1014.

The *McBee* court found the facts it faced to lie, as in *Connick,* somewhere mid-spectrum. In such a situation, it continued, the appropriate test was that of *Pickering. Id.* at 1015. Thus *McBee* interpreted *Pickering* and *Connick* to require a court, when evaluating employer actions taken in alleged retaliation of protected conduct, "to balance the First Amendment values implicated by those activities against the possible disruptive effect on governmental provision of services within the specific context of each case." *Coughlin v. Lee,* 946 F.2d 1152, 1158 (5th Cir.1991) (citing *McBee,* 730 F.2d at 1016–17).

*Matherne* itself demonstrates how *McBee* changed the analysis of First Amendment protection for political activity. In the first part of *Matherne,* the court concluded that the defendant was entitled to qualified immunity in his individual capacity because the law was not clearly established in July 1983 that a sheriff could not retaliate against a nonpolicymaking employee in response to that employee's political activity. *Matherne,* 851 F.2d at 756–59. In the second part of the opinion,

however, the court examined whether the sheriff could be held liable in his official capacity, an examination that was not limited to the law as of July 1983. The court affirmed the sheriff's liability in his official capacity. *Id.* at 759–61. The crucial difference was the analytical framework established by *McBee. Id.* at 759, 760. The law of *McBee* was clearly established in January 1988. We therefore turn to the application of that law to the facts before us.

It is undisputed that Click and Falcon's conduct, running for elected office, addressed matters of public concern. Thus this case, like *Matherne, McBee,* and *Connick,* falls somewhere in the middle of the *McBee* spectrum. It follows that Sheriff Copeland was required to engage in *McBee–Pickering–Connick* balancing before taking disciplinary action against Click and Falcon because of their political activity.

The *McBee–Pickering–Connick* "balancing test is not all-or-nothing but rather a sliding scale under which "public concern' is weighed against disruption: "a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern.' " *Matherne,* 851 F.2d at 761 (quoting *Gonzalez v. Benavides,* 774 F.2d 1295, 1302 (5th Cir.1985)). Factors to weigh in the balancing include: (1) whether the employee's actions involve "public concerns"; (2) whether "close working relationships" are essential to fulfilling the employee's public responsibilities; (3) the time, place, and manner of the employee's activity; (4) whether the activity can be considered "hostile, abusive, or insubordinate"; and (5) whether the activity "impairs discipline by superiors or harmony among coworkers." *Matherne,* 851 F.2d at 760 & nn. 47–48 (citing *McBee,* 730 F.2d at 1016–17; *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987)).

On these facts the balancing clearly tips in favor of the plaintiffs. Copeland did not argue below nor to us that Click and Falcon's political candidacies had any effect on their performance, on others' performance, on discipline, or on harmony among coworkers. Copeland has not claimed any

disruption at all; he maintains that Click and Falcon's candidacies had absolutely nothing to do with his decision to transfer them to jail duties. Rather, Copeland maintains that he transferred them solely in response to a personnel shortage at the jail. This assertion, while important for the question of causation, is fatal to his claim of qualified immunity.[4]

It follows that the district court erred in according Sheriff Copeland qualified immunity and directing a verdict for him on that basis. We turn next to the question of Copeland's liability in his official capacity.

### III.

The district court directed a verdict for Sheriff Copeland in both his individual and official capacities. Although we have already concluded that Copeland cannot avert individual liability on the basis of qualified immunity, he may still escape liability altogether if the record demonstrates no causal connection between his transfer of plaintiffs and their candidacy for sheriff. We therefore address whether the district court erred by directing a verdict on causation.

This court reviews directed verdicts de novo. After reviewing the evidence in the light most favorable to the non-movant, a directed verdict is appropriate only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable [persons] could not arrive at a contrary verdict." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

The appropriate framework for analyzing plaintiffs' claim of retaliatory transfer is that of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under *Mt. Healthy,* the employee has the initial burden of demonstrating (1) that his conduct was

---

[4]See *Coughlin v. Lee,* 946 F.2d 1152, 1157 (5th Cir.1991) (test for causation is distinct from test for constitutional protection). We address the causation question in Section III below.

protected by the First Amendment, and (2) that this conduct was a "substantial" or "motivating" factor in the employer's action. If the employee survives this threshold, the burden then shifts to the employer (3) to show, by a preponderance of the evidence, a legitimate reason for which it would have taken the same action against the employee even in the absence of this protected conduct. The employee can then refute this assertion by showing that the employer's proffered explanation is merely pretextual. *Id.* at 287, 97 S.Ct. at 576; *Coughlin,* 946 F.2d at 1157. Our analysis in the previous section demonstrates that Click and Falcon's conduct was protected by the First Amendment. We turn, then, to proof of causation.

Whether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against the employee is a question of fact, ordinarily rendering summary disposition inappropriate. *Brawner v. City of Richardson, Tex.,* 855 F.2d 187, 193 (5th Cir.1988) (summary judgment inappropriate because defendant's motive is a material issue of fact). The evidence the plaintiffs presented to prove that their political candidacies were a substantial motivating factor in Sheriff Copeland's decision to transfer them included: (1) that they were performing their jobs satisfactorily before the transfer; (2) that Copeland transferred them around the day that Falcon announced his candidacy; (3) that Copeland transferred five jail guards *to* law enforcement positions on the same day plaintiffs were transferred *from* those positions; (4) that in the first three months of 1988, only three law enforcement officers, including plaintiffs, were transferred to jail duty, while nine officers were transferred from jail duty to law enforcement positions; and (5) that Copeland threatened to discharge Click after the primary. Viewing this evidence in the light most favorable to plaintiffs, as we must, we cannot say that a reasonable jury could not infer that plaintiffs' candidacies were a substantial motivating factor in Sheriff Copeland's decision to transfer them.

As to the third prong of the *Mt. Healthy* test, Copeland is entitled to show that he would have transferred Click and Falcon even if they had not engaged in protected activity. Sheriff Copeland

testified that he was unaware that they were candidates for sheriff when he transferred them. According to Copeland, he transferred them solely because of a severe personnel shortage at the jail. Sheriff Copeland's evidence of his motivation for transferring plaintiffs, along with the plaintiffs' evidence that supports a contrary inference, is fodder for the jury. If the jury accepts Sheriff Copeland's explanation that he transferred Click and Falcon because of a legitimate priority of the office and without regard to their candidacy for sheriff, he is entitled to a verdict. But Sheriff Copeland is subject to liability if he transferred them in retaliation for exercising their First Amendment rights. *Mt. Healthy,* 429 U.S. at 283–84, 97 S.Ct. at 574–75; *Brantley v. Surles,* 718 F.2d 1354, 1358 (5th Cir.1983); *Fyfe v. Curlee,* 902 F.2d 401, 404 (5th Cir.), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990).

In short, plaintiffs presented sufficient evidence of causation to withstand a motion for directed verdict at the close of their case. We therefore vacate the district court's judgment in favor of Sheriff Copeland. In view of our decision to vacate and remand the case against Sheriff Copeland, we also vacate the judgment in favor of Bexar County. On remand, the district court is free to re-evaluate whether the sheriff's liability, if any, can be imputed to the County because of his role as a County policymaker. See *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980).

IV.

For the foregoing reasons, we conclude that the district court erred in according defendant Copeland qualified immunity in the suit against him in his individual capacity. We also conclude that Copeland was not entitled to a directed verdict on the question of liability in his official capacity. We therefore VACATE the judgment entered in favor of all defendants and REMAND for further proceedings consistent with this opinion.

VACATED and REMANDED.