Henry L. BRINSTON, Plaintiff,

v.

Barbara H. DUNN, Individually, and in Her Official Capacity as Hinds County Circuit Clerk, Hinds County, Mississippi, Defendant.

Civil Action No. 3:95–CV–501(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

April 22, 1996.

Louise Harrell, Jackson, Mississippi, for plaintiff.

Dennis L. Horn, Horn & Payne, Jackson, MS, Armin J. Moeller, Jr., David M. Thomas, II, Aubry Matt Pesnell, Phelps Dunbar, Jackson, MS, for defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Barbara Dunn for summary judgment. Plaintiff Henry L. Brinston opposes the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted.

Plaintiff Brinston, a former deputy clerk with the Hinds County Circuit Clerk's office, filed this action against Hinds County Circuit Clerk Barbara Dunn pursuant to 42 U.S.C. § 1983, charging that Dunn unlawfully termi-

nated his employment in violation of his rights under the First Amendment of the United States Constitution in that she terminated him in retaliation for his having qualified to run against her for the position of circuit clerk. In the present motion, Dunn asserts alternative bases upon which she contends summary judgment should be granted. First, she charges that plaintiff's termination was lawful since the interests of the public outweigh Brinston's First Amendment rights. She further contends that because Brinston was a confidential employee, she was entitled to discharge him because of his disloyalty in seeking her office. And finally, Dunn maintains that she is entitled to qualified immunity, in any event, since plaintiff's claimed First Amendment right was not clearly established at the time his employment was terminated. For reasons that follow, the court concludes that Dunn enjoys qualified immunity for her conduct. Consequently, the court does not address her further contentions.

■■■ Section 1983 provides for the recovery of money damages against persons who, under color of state law, deprive a person of federal rights guaranteed by the constitution or federal statutes. However, "[g]overnment officials performing discretionary functions are entitled to qualified immunity from suit unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Gunaca v. State of Texas,* 65 F.3d 467, 473 (5th Cir.1995) (citing *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995)). In evaluating a public official's claim of qualified immunity, a two-step inquiry applies. *Vojvodich v. Lopez,* 48 F.3d 879, 886–87 (5th Cir.1995). First the court must determine whether the plaintiff has alleged a violation of a federal right that was clearly established at the time of the alleged incident. If he has failed to do so, that ends the court's inquiry. However, if the plaintiff meets this initial burden, then the court next determines whether the conduct of the defendant was objectively reasonable in light of clearly established law. *Id.* The defendant is entitled to qualified immunity if the alleged conduct was objectively reasonable. *Id.*

The Supreme Court has addressed the First Amendment rights of public employees in two related lines of cases, one involving political patronage and the other involving free speech on matters of public concern. Political patronage cases are those in which a public employee is discharged for political activity or party affiliation, while public concern cases are those in which a public employee is penalized for speech which touches on a matter of public concern. Both implicate the First Amendment rights of public employees.

The Supreme Court outlined the proper analysis of patronage cases in two significant cases, *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (invalidating termination of sheriff's deputies for political party affiliation), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (termination of assistant prosecutors for party affiliation improper). In *Elrod,* the Court held that noncivil service employees could not be dismissed because of their political affiliation unless they occupied policymaking or confidential positions. 427 U.S. at 367, 96 S.Ct. at 2686–87. The Court refined this inquiry in *Branti,* holding that "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." 445 U.S. at 517, 100 S.Ct. at 1294.

Three Supreme Court cases offer guidance for analyzing public concern cases. The Court held in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), that the courts must weigh the interests of a public employee to speak as a citizen regarding matters of public concern against the legitimate interests of the State in "promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1735. In *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), the Court held that the employee must first demonstrate that the speech at issue addresses a matter of public concern rather than a matter of private concern. Only after the employee meets this initial burden can the court

proceed to the next inquiry, balancing the government's interests against the employee's First Amendment rights. *Id.* at 149, 103 S.Ct. at 1691. *See also Stewart v. Parish of Jefferson,* 951 F.2d 681 (5th Cir.1992) (employee's speech not a matter of public concern); *Kirkland v. Northside Indep. Sch. Dist.,* 890 F.2d 794 (5th Cir.1989) (teacher's speech not a matter of public concern). The Court set forth several factors to consider, including the government's interests in efficiency, the need for close working relationships, the disruptiveness of the speech, the context of the speech, and the time, place and manner of the speech. 461 U.S. at 151–154, 103 S.Ct. at 1692–94. An employer need not wait for anticipated disruption to occur but may take preemptive action. *Id.* at 152, 103 S.Ct. at 1692–93. Finally, the Court held in *Rankin v. McPherson,* 483 U.S. 378, 390–91, 107 S.Ct. 2891, 2900–01, 97 L.Ed.2d 315 (1987), that the nature of the employee's position is another factor to be considered in weighing the relative interests.

This is a political patronage case and not a public speech case. However, as the law has evolved in the Fifth Circuit, the same considerations or factors have been held to govern both types of cases.

The Fifth Circuit in *McBee v. Jim Hogg County,* 730 F.2d 1009 (5th Cir.1984), set forth the framework under which the First Amendment rights of public employees in free speech and political patronage cases should be analyzed by specifically adopting the *Pickering* balancing test based on several factors set forth in *Connick.*

> Each case must be considered on its particular facts, sifting through such factors and circumstances as the *Connick* Court outlined in order to strike the proper balance between the employee's speech and associational rights as citizen and the state's right as an employer to loyal and efficient service.

*Id.* at 1014.

> Factors to weigh in the balancing include: (1) whether the employee's actions involve "public concerns"; (2) whether "close

working relationships" are essential to fulfilling the employee's public responsibilities; (3) the time, place, and manner of the employee's activity; (4) whether the activity can be considered "hostile, abusive, or insubordinate"; and (5) whether the activity "impairs discipline by superiors or harmony among coworkers."

*Click v. Copeland,* 970 F.2d 106, 112 (5th Cir.1992) (citing *Matherne v. Wilson,* 851 F.2d 752, 760 & nn. 47–48 (5th Cir.1988); *McBee,* 730 F.2d at 1016–17; and *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899).

The *McBee* court held that political patronage and public concern speech cases should be analyzed as if on a spectrum. 730 F.2d at 1014. The court explained that political patronage cases such as *Elrod* and *Branti,* in which the factors to be evaluated by the court weigh heavily in favor of the employee, are located at one end of the spectrum and that public concern cases such as *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970), and *Duke v. North Texas State University,* 469 F.2d 829.(5th Cir.1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160 (1973), in which the relevant factors weigh heavily in favor of the employer,[1] are located at the other end of the spectrum. *Id.* Cases involving both political patronage and speech on a matter of public concern were found somewhere in the middle. *Id.* As the Fifth Circuit later explained in *Kinsey v. Salado Indep. School Dist.,* 950 F.2d 988, 992–93 (5th Cir.1992), both political patronage cases and public concern speech cases are to be analyzed by balancing the interests of the government against those of the employee. The only distinction in the analysis of these two types of cases is that in public concern cases the employee must initially demonstrate that the speech in question touches on a matter of public concern. The court weighs the relative interests of the parties in such cases only after the employee meets this initial burden. By contrast, in political patronage cases the court proceeds directly to an analysis of the relative interests of the parties. *Id.*

---

1. In these two cases, "instructors had incited student disturbances that were sufficiently serious to call in question the ability of the academic authorities to maintain order on campus." *McBee,* 730 F.2d at 1014.

■ It appears that a public employee's status as a confidential or policymaking employee is a factor that weighs heavily in favor of a finding that the discharge of the employee does not violate the First Amendment. The Fifth Circuit held in *Stegmaier v. Trammell,* 597 F.2d 1027 (5th Cir.1979), that a deputy circuit court clerk was a confidential employee even though she did not possess confidential information per se and that she could therefore be discharged on political grounds. In *Soderstrum v. Town of Grand Isle,* 925 F.2d 135 (5th Cir.1991), the court similarly held that a personal secretary who was a confidential employee could be discharged based on her political affiliation. However, subsequent cases indicate that while the nature of a public employee's position as a confidential or policymaking employee is an important factor in determining whether the employee's interests outweigh those of the employer, it is not dispositive. "[C]ases involving public employees who occupy policymaker or confidential positions fall much closer to the employer's end of the spectrum, where the government's interests more easily outweigh the employee's (as private citizen)." *Kinsey,* 950 F.2d at 994. Thus, "[a]lthough the fact that a public employee holds a policymaking position is relevant to the required balancing of interests, it is not the ultimate determination." *Vojvodich,* 48 F.3d at 884.

The Fifth Circuit has also addressed the issue of qualified immunity in cases similar to the present case. The court found that government officials were entitled to qualified immunity in *Noyola v. Texas Department of Human Resources,* 846 F.2d 1021 (5th Cir. 1988), a case in which the plaintiff alleged that he was terminated in violation of his First Amendment free speech rights. The court explained, "There will rarely be a basis for a *priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights" where the courts must engage in a case-by-case balancing of competing interests. *Id.* at 1025.

In *Click v. Copeland,* 970 F.2d 106 (5th Cir.1992), two sheriff's deputies brought suit when they were transferred to less desirable duties after they became candidates for sheriff. The defendant asserted in that case that the decision to transfer the plaintiffs was unrelated to their political activity. Since there were no countervailing interests asserted by the defendant, the court found that "the balancing clearly tips in favor of the plaintiffs." *Id.* at 112. Accordingly, the court reversed the lower court's ruling granting qualified immunity and remanded the case for resolution of the issue of causation. *Id.* The Fifth Circuit similarly denied a sheriff's defense of qualified immunity in *Vojvodich* on the ground that he failed to allege that his action was based on avoiding any disruption in the operation of his department. 48 F.3d at 887. Yet, in *Brady v. Fort Bend County,* 58 F.3d 173 (5th Cir.1995), the Fifth Circuit reluctantly affirmed the denial of a sheriff's qualified immunity defense. "Both of [defendant's] attacks are not without force and cause us concern about anomalies built into Fifth Circuit law. Unfortunately, without re-examination en banc or a shift triggered by the Supreme Court, application of our prior precedent requires us to approve the district court's holding." *Id.* at 175. However, the *Brady* court drew a distinction between cases involving sheriffs and those involving other public employers. "Except with regard to the line of authority this circuit has developed, for good or ill, regarding the discharge of deputy sheriffs, *Noyola* remains compelling." *Id.* at 176.[2]

Most recently, the Fifth Circuit held in *Gunaca v. State of Texas,* 65 F.3d 467 (5th Cir.1995), that a district attorney was protected by qualified immunity for terminating an investigator based on his objectively reasonable conclusion that the plaintiff was in a position that required political loyalty.

[The district attorney] took office in January of 1993. By that time, both the Supreme Court and the Fifth Circuit had recognized a class of public employees from whom political allegiance may be demanded: public employees whose First

---

2. *Brady* was subsequently certified for rehearing *en banc* by the Fifth Circuit, but the case was dismissed by the en banc panel for lack of jurisdiction.

Amendment interests are outweighed by a governmental interest in the employee's political loyalty.

*Id.* at 474. The court then apparently applied a categorical approach to evaluating whether the defendant's conclusion that governmental interests predominated was objectively reasonable.

The right that Gunaca asserts in his complaint and summary judgment response was not clearly established at the time Esparza allegedly violated it because neither the Fifth Circuit nor the Supreme Court had addressed the issue of political patronage in the hiring or firing of investigators in district attorney's offices, and neither had addressed an issue sufficiently analogous that a reasonable official would understand from its resolution that it is a First Amendment violation to dismiss or to not hire an investigator on the grounds that the investigator supported the campaign of the official's opponent.

*Id.* at 475 (citing *Noyola* ).

■ In the present case, defendant submits that she fired plaintiff because she believed that his candidacy would disrupt the operations of the office and because she believed that plaintiff was a confidential employee from whom she could legitimately demand political allegiance as a condition of his continued employment. The court finds that both conclusions were objectively reasonable in light of the existing Fifth Circuit precedent, and accordingly, defendant is entitled to qualified immunity.

The facts, viewed in the light most favorable to the plaintiff, demonstrate that defendant could reasonably have concluded that plaintiff's candidacy for her position would disrupt the efficient functioning of the office in such a manner that the interests of the public would outweigh plaintiff's First Amendment rights. Plaintiff, who was fired the day after he became a candidate, was one of ten employees working in a small office where the compatibility of all the employees is especially important since all of the employees perform roughly the same duties. Furthermore, plaintiff was responsible for the safekeeping of large sums of money, guns, narcotics and other evidence used in criminal trials. A breach of these duties could have exposed defendant to personal liability. In addition, employees in the office might have been placed in the difficult position of choosing sides, trying to predict (and hence support) the ultimate winner of the upcoming election in order to secure favorable treatment after the election. Under such circumstances, a reasonable person in defendant's position could surely have perceived that her authority would likely be undermined as to those employees seeking to ingratiate themselves with plaintiff, while those who supported defendant might have found it difficult to work with plaintiff for fear of incurring his disfavor. Defendant could reasonably have questioned whether she could trust plaintiff after she learned of his candidacy. Finally, defendant could also have reasonably concluded that plaintiff was a confidential employee from whom she could demand political loyalty under applicable Fifth Circuit precedent. *See Stegmaier,* 597 F.2d 1027 (deputy circuit clerk deemed a confidential employee). Thus, defendant is entitled to qualified immunity.

Since the court finds that defendant is entitled to qualified immunity, defendant's motion for summary judgment should be granted. Accordingly, the court need not evaluate the relative weight of plaintiff's First Amendment rights against the rights of the defendant, nor must the court determine whether plaintiff was a confidential employee under the law.

For the foregoing reasons, it is ordered that defendant's motion for summary judgment is granted. A separate judgment will be entered in accordance with Rule 58.

SO ORDERED.