United States Court of Appeals,

Fifth Circuit.

No. 93-8838.

Mark S. VOJVODICH, Plaintiff-Appellant,

v.

Ralph LOPEZ, Bexar County Sheriff, Individually and in his Official Capacity, Defendant-Appellee.

March 30, 1995.

Appeal from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, SMITH and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The plaintiff, Mark S. Vojvodich, brought this action against Sheriff Ralph Lopez, claiming that he was transferred from his previous position in the Bexar County Sheriff's Office because of his political activity and affiliation in violation of his First Amendment rights. The district court granted summary judgment in favor of the sheriff, holding that, because the deputy occupied the position of a "policymaker," his First Amendment rights were outweighed by the sheriff's interest in having a loyal employee. As it applied an incorrect legal standard in determining whether the deputy's rights were infringed, we vacate the district court's summary judgment, and remand for further proceedings.

## I. BACKGROUND

Deputy Mark Vojvodich worked as a Bexar County Deputy Sheriff for over ten years, during which time he worked his way up the chain of command. In 1992, he was promoted to lieutenant and

1

assigned as commander of the Narcotics Unit of the Bexar County Sheriff's Office (BCSO). The Narcotics Unit is a field command within the Criminal Investigations Division.[1]

Over the years Deputy Vojvodich served as a delegate to the Republican National Committee and as a member of several republican organizations, including the Young Republicans Club and the Republican Mens Club. In 1992, Deputy Vojvodich actively campaigned for the re-election of then-incumbent republican sheriff, Harlon Copeland. Deputy Vojvodich served on Sheriff Copeland's campaign committee, attended political campaign events and fundraisers, associated with campaign staff at campaign

---

[1]Under Texas law, some sheriffs' departments, of which BCSO is one, may establish a civil service system for their employees. *See* Tex.Local Gov't Code Ann. § 158.032 (West Supp.1995). The BCSO elected to do just that. Accordingly, the Bexar County Civil Service System Commission was created. It adopted rules regarding various aspects of employment with the BCSO, including promotions, disciplinary, grievances, and "other matters" relating to employee advancement and benefits. *Id.* § 158.035. These rules announce, inter alia, a county policy to promote employees and to administer "all other matters affecting [their employment], including ... transfers [and] demotion[s] ... without regard to ... political affiliation." Rules of Bexar County Sheriff's Civil Service Comm'n § 4, at 12 (Mar. 14, 1985, as revised through May 21, 1992). The rules also restrict somewhat the political activities of civil service employees.

These rules apply to all department employees except those positions that the sheriff specifically elects to exempt from the civil service system. The Bexar County Sheriff is entitled by law to exempt up to ten positions. *See* Tex.Local Gov't Code Ann. § 158.038(b). The defendant, Sheriff Ralph Lopez, did not choose to exempt Deputy Vojvodich's position as Narcotics Commander. Accordingly, Deputy Vojvodich held a "non-exempt" position within the BCSO; thus, the terms and conditions of his employment were governed by the rules. Sheriff Lopez does not allege that Deputy Vojvodich violated any rules, even though the deputy was active politically.

headquarters, donated money to the campaign fund, and urged friends and associates to vote for Copeland. In the election, Sheriff Copeland was opposed by Ralph Lopez, a democrat.

That Deputy Vojvodich supported Sheriff Copeland was well known within the BCSO. In fact, on one occasion a Lopez supporter within the sheriff's office tried to recruit Vojvodich to support Lopez's candidacy, but the deputy refused. On election day, however, Deputy Vojvodich's candidate was defeated. The voters of Bexar County elected Mr. Lopez sheriff, and he assumed his duties on January 1, 1993.

As part of the transition process, Sheriff Lopez asked Deputy Vojvodich to prepare a report on the operations of the Narcotics Unit. The deputy complied, preparing a forty-page report in which he proffered several recommendations. Concurrently, Deputy Vojvodich continued to direct the day-to-day operations of the unit. Vojvodich claims that, although he had opposed the election of Sheriff Lopez, he continued to serve loyally in his position as narcotics commander.

Sheriff Lopez claims that upon taking office he evaluated the performance of all units within the BCSO. This evaluation, Sheriff Lopez claims, revealed that the narcotics unit was not operating productively. Sheriff Lopez asserts that he and Deputy Vojvodich disagreed as to the appropriate manner of improving productivity. When the narcotics unit thereafter failed to demonstrate what the sheriff believed to be satisfactory progress, the sheriff transferred Deputy Vojvodich to head the Communications/Dispatch

3

Division. The sheriff insists that the position to which he transferred Vojvodich was equal in prestige to the position previously held by Vojvodich in the narcotics unit.

Deputy Vojvodich claims that he was unaware that the sheriff was evaluating the unit. He also disputes the Sheriff's assertion that the two disagreed on how to improve the operations of the narcotics unit. Vojvodich claims that at no time while he headed Narcotics did the Sheriff express dissatisfaction with his performance or that of the unit. In fact, Vojvodich claims, it was not until this litigation that he learned that he was transferred for alleged unsatisfactory performance. Unlike the sheriff, Deputy Vojvodich sees his transfer as a demotion.[2]

Deputy Vojvodich also claims that Sheriff Lopez either failed or refused to promote him to Night Chief, a position that was created during the tenure of the previous sheriff. According to Vojvodich, the Night Chief position was declared by the Civil Service Commission to be a non-exempt, Captain-level position. As such, Deputy Vojvodich argues that, according to the civil service system rules, he should have been promoted to the position because he was the top candidate on the applicable promotion list. Deputy Vojvodich was not promoted, however, and on Sheriff Lopez's

---

[2]The former Chief of Criminal Investigations, James De Lesdernier, affirmed that, based on his law enforcement experience, "an involuntary transfer from the position of Narcotics Lieutenant to Communications/Dispatching Lieutenant would be a punitive transfer to a less desirable, less prestigious position." Deputy Vojvodich also stated that his new position offered less job satisfaction, fewer benefits, and that, in his view, the transfer was a "career setback."

recommendation the position was subsequently abolished.

Vojvodich insists that he was transferred and denied the promotion to Night Chief solely because he is a republican and because he supported Lopez's opponent in the general election. Vojvodich filed suit in federal district court alleging that Sheriff Lopez had violated his state and federal constitutional rights.

Lopez disputes any retaliatory motive for his decision to transfer Deputy Vojvodich to Communications/Dispatch or for his recommendation to abolish the Night Chief's position. The sheriff states that he transferred Vojvodich from narcotics because he was not satisfied with the performance of the Narcotics Unit, he disagreed with Deputy Vojvodich regarding the organization of the unit, and he wanted better to utilize Vojvodich's knowledge of and interest in computers and communications technology. Sheriff Lopez likewise denies that any political animus motivated his recommendation to eliminate the Night Chief position, claiming that he favored abolishing the position because he believed it would cause an unnecessary expenditure of funds.

Sheriff Lopez moved for summary judgment on three grounds: that he is entitled to qualified immunity; that Deputy Vojvodich occupied the position of a "policymaker" and thus could be demoted because of his political activities; and that Vojvodich failed to produce evidence that he was transferred because of activities protected by the First Amendment. The district court granted the sheriff's motion based solely on the court's finding that the

5

deputy was a policymaker and thus was subject to the action taken on the grounds of political activity.  After so ruling, the court dismissed without prejudice the deputy's supplemental state-law claims.  Deputy Vojvodich timely appealed the district court's ruling.

## II. DISCUSSION

On this appeal, we review only the district court's summary dismissal of Deputy Vojvodich's federal-law claims.  We review a summary judgment by examining "the record under the same standards which guided the district court."[3]  Summary judgment is appropriate when no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law.[4]  In determining whether the grant was proper, we view all fact questions in the light most favorable to the nonmovant.  Questions of law are reviewed *de novo*.[5]

### A.

We may assume without deciding that the district court's factual finding that Deputy Vojvodich was a "policymaker" was not clearly erroneous.[6]  Even if this finding is supported, however,

---

[3]*Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

[4]*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

[5]*Walker,* 853 F.2d at 358.

[6]"Policymaker" has been defined, in part, as a public employee "whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation,

6

the district court erred by granting summary judgment in favor of Sheriff Lopez based solely on its finding that Vojvodich had occupied a policymaking position. The district court apparently believed that Deputy Vojvodich's First Amendment interests were necessarily outweighed by Sheriff Lopez's interests as a matter of law simply because it classified Vojvodich as a policymaker. That is not the case.

Although the fact that a public employee holds a policymaking position is relevant to the required balancing of interests, it is not the ultimate determination. In *Branti v. Finkel,*[7] the Supreme Court expressly rejected the categorical approach used here by the district court. The *Branti* Court explained that "the ultimate inquiry is not whether the label "policymaker' or "confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved."[8] Indeed, the Supreme Court clearly indicated in *Branti* that "party affiliation is not necessarily relevant to every policymaking or confidential position."[9]

---

or policy determinations made by supervisors." *Stegmaier v. Trammell,* 597 F.2d 1027, 1035 (5th Cir.1979). "[C]onsideration should also be given to whether the employee acts as an advisor or formulates plans for the implementation of broad goals." *Gonzalez v. Benavides,* 712 F.2d 142, 149 (5th Cir.1983) (quoting *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

[7]445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

[8]*Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.

[9]*Id.*

7

In *Connick v. Myers,*[10] the Supreme Court again addressed the First Amendment rights of public employees, and expressly adopted the balancing analysis first recognized in *Pickering v. Board of Education.*[11]  Under *Connick* and *Pickering,* the court's task "is to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' "[12]

To assert the protections of the First Amendment, the employee must establish, as a threshold matter, that his speech or activity related to a matter of public concern.[13]  In the present case, there can be no question that the claimed activity, associating with political organizations and campaigning for a political candidate, related to a matter of public concern.[14]  If the plaintiff meets this burden, the employer then must establish that its interest in promoting the efficiency of the services provided by its employees outweighs the employee's interest in engaging in the protected activity.[15]  This analysis in reality is

---

[10]461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

[11]391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

[12]*Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (alteration in original) (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734).

[13]*Connick,* 461 U.S. at 146, 103 S.Ct. at 1690.

[14]*Coughlin v. Lee,* 946 F.2d 1152, 1158 (5th Cir.1991).

[15]*United States Dep't of Justice v. Federal Labor Relations Auth.,* 955 F.2d 998, 1005 (5th Cir.1992).

a sliding scale or spectrum upon which " "public concern' is weighed against disruption."[16]

We have repeatedly recognized that "a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern."[17] This Court has also noted that in "cases involving public employees who occupy policymaker or confidential positions ... the government's interests more easily outweigh the employee's (as a private citizen)."[18] These general observations, however, do not negate the oft repeated warning that because of the wide variety of situations in which this issue might arise, each case should be considered on its particular facts.[19]

In evaluating particular cases, this Court has looked to the factors discussed by the Supreme Court in *Connick.* Although not intended to be the exclusive considerations, these factors include (1) the degree to which the employee's protected activity involved

---

[16]*Click v. Copeland,* 970 F.2d 106, 112 (5th Cir.1992); *Matherne v. Wilson,* 851 F.2d 752, 761 (5th Cir.1988); *Gonzalez v. Benavides,* 774 F.2d 1295, 1302 (5th Cir.1985), *cert. denied,* 475 U.S. 1140, 106 S.Ct. 1789, 90 L.Ed.2d 335 (1986).

[17]*Gonzalez,* 774 F.2d at 1302 (citing *Connick,* 461 U.S. at 152, 103 S.Ct. at 1693); *see Kinsey v. Salado Ind. Sch. Dist.,* 950 F.2d 988, 994 (5th Cir.) (en banc), *cert. denied,* --- U.S. ----, 112 S.Ct. 2275, 119 L.Ed.2d 201 (1992); *id.* at 1000 (Goldberg, J., dissenting); *Matherne,* 851 F.2d at 761; *McBee v. Jim Hogg County, Tex.,* 730 F.2d 1009, 1017 (5th Cir.1984) (en banc).

[18]*Kinsey,* 950 F.2d at 994 (citing *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)); *see also id.* at 998 (Higginbotham, J., concurring).

[19]*Connick,* 461 U.S. at 154, 103 S.Ct. at 1694; *Pickering,* 391 U.S. at 569, 88 S.Ct. at 1735; *McBee,* 730 F.2d at 1014.

a matter of public concern, and the gravity of that concern, (2) whether close working relationships are essential to fulfilling the responsibilities of the public office and the extent to which the employee's protected activities may have affected those relationships, (3) the time, place, and manner of the employee's activities, and (4) the context in which the employee's activities were carried out.[20]  A proper consideration of these factors allows a court to balance the plaintiff's interest in the claimed protected activity against the alleged disruption caused by that activity to the effective and efficient fulfillment of the government's public responsibilities.

We have no doubt that the government has a "legitimate interest in maintaining proper discipline in the public service, to the end that its duties may be discharged with efficiency and integrity."[21]  In addition, we recognize that "party affiliation may be an acceptable requirement for some types of governmental employment.  Thus, if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency."[22]  Likewise, a private citizen's right to freedom of

---

[20]*See Connick,* 461 U.S. at 151-53, 103 S.Ct. at 1692-93; *Kinsey,* 950 F.2d at 995-96;  *McBee,* 730 F.2d at 1013.

[21]*McBee,* 730 F.2d at 1013 (citing *Connick,* 461 U.S. at 150, 103 S.Ct. at 1691).

[22]*Branti,* 445 U.S. at 517, 100 S.Ct. at 1294;  *see Soderstrum v. Town of Grand Isle,* 925 F.2d 135 (5th Cir.1991) (police chief's personal secretary served in position of

10

speech, even political speech, "is not absolute, insofar as it conflicts with his role as a public employee."[23]

In the present case, however, Sheriff Lopez has failed to allege that the deputy's political activities had any effect whatever on BCSO operations. In fact, the sheriff insists that Deputy Vojvodich's political activities were wholly irrelevant, and that his employment actions were based entirely on other, nonpolitical factors. Because the sheriff has not alleged that Vojvodich's activities actually or potentially affected the Sheriff's Office's ability to provide services, there simply is no countervailing state interest to weigh against the employee's First Amendment rights. Thus, we cannot affirm the summary judgment in favor of Sheriff Lopez on this basis.

B.

Sheriff Lopez also moved for summary judgment on the alternative grounds that (1) Deputy Vojvodich failed to produce evidence that his transfer was motivated by his political affiliation or activities, and (2) the Sheriff was entitled to qualified immunity. Because it granted summary judgment based solely on the finding that Deputy Vojvodich was a policymaker, the district court did not address either of these alternative grounds.

We may affirm a decision on grounds other than those upon which the district court ruled, so we next consider each of the arguments in turn. When we do so in light of the summary judgment

confidence requiring complete loyalty).

[23]*Kinsey,* 950 F.2d at 992.

11

record before us, we conclude that Sheriff Lopez has not established entitlement to summary judgment on either basis.

1. CAUSATION

Sheriff Lopez contends that Deputy Vojvodich failed to submit sufficient evidence to establish that Sheriff Lopez's actions were motivated by Deputy Vojvodich's protected activities.  To be entitled to summary judgment, Sheriff Lopez must show the absence of a genuine issue of material fact on the causation element of Vojvodich's claim.  We hold that Deputy Vojvodich has presented sufficient evidence on this issue to create a question of fact for the jury.

To show that his political affiliation or activities motivated the Sheriff, Vojvodich provides evidence that (1) he was a republican, and Sheriff Lopez was a democrat, (2) he actively campaigned for the incumbent whom Sheriff Lopez eventually defeated, (3) his support of the incumbent's candidacy was well known within the BCSO generally, and in particular by Sheriff Lopez's supporters there, (4) within three and a half months after Sheriff Lopez assumed office, the Deputy was transferred to a less desirable position with diminished prestige and career opportunity, even though his performance evaluations were satisfactory and the Sheriff had expressed no dissatisfaction with his performance, and (5) within the same timeframe, other BCSO employees who opposed Sheriff Lopez's election were terminated. Based on this evidence, we conclude that a reasonable factfinder could infer that Sheriff Lopez's transfer of Deputy Vojvodich was substantially motivated by

12

the Deputy's party affiliation or his political activities or both.

2. QUALIFIED IMMUNITY

Finally, we address Sheriff Lopez's contention that he is entitled to qualified immunity. State officials are protected by qualified immunity for alleged constitutional torts if their conduct does not violate clearly established law effective at the time of the alleged tort.[24] The first step in this analysis is to determine whether the plaintiff has alleged a violation of a constitutional right at all.[25] As we have already discussed, absent a sufficient showing of disruption of the government's ability to provide services, Vojvodich's activity was constitutionally protected. In addition, we hold that a reasonable factfinder could find that political animus motivated the Sheriff's actions. Thus, Deputy Vojvodich has sufficiently alleged the violation of a constitutional right.

The second step in the qualified immunity analysis is determining whether the constitutional rights allegedly violated were clearly established at the time the events occurred. In *Click v. Copeland,*[26] we held that by January of 1988 the law was clearly established that a retaliatory transfer to a less interesting, less prestigious position could implicate the First Amendment, even if

---

[24]*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

[25]*Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

[26]970 F.2d 106 (5th Cir.1992).

13

the transfer did not result in a decrease in pay.[27]  As far back as 1985, the established law in this circuit has been that a public employer cannot retaliate against an employee for expression protected by the First Amendment merely because of that employee's status as a policymaker.[28]

In addition, by January 1992 at the latest, the law was equally clear that, regardless of whether an employee is a policymaker, a public employer cannot act against an employee because of the employee's affiliation or support of a rival candidate unless the employee's activities in some way adversely affect the government's ability to provide services.[29]  Therefore, prior to March 1993, it should have been readily apparent to a reasonable sheriff that he could not retaliate against a policymaking deputy for exercising his First Amendment rights unless the deputy's activities had in some way disrupted the sheriff's department.  Since Sheriff Lopez has alleged no disruption of governmental functions as a result of Vojvodich's activities, we cannot hold that he is entitled to qualified immunity in the face of Vojvodich's allegations, and we cannot affirm the district court's summary judgment in favor of the defendant on this basis.[30]

---

[27]*Id.* at 109-11.

[28]*Gonzalez,* 774 F.2d at 1301-02;  *McBee,* 730 F.2d at 1016.

[29]*See Kinsey,* 950 F.2d at 996;  *id.* at 1000 (Goldberg, J., dissenting).

[30]*Click,* 970 F.2d at 112-13 (sheriff's failure to allege disruption fatal to his claim of qualified immunity).

### III. CONCLUSION

For the reasons given above, the summary judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.