DECISION AND JUDGMENT ENTRY
This is an appeal from a December 11, 1998 opinion and judgment entry of the Lucas County Court of Common Pleas in which the court granted summary judgment to appellees, the city of Toledo Division of Police, Lieutenant Paul Long ("Lt. Long")and Lieutenant Leo Eggert ("Lt. Eggert"), on claims brought against them by appellant, James P. Bryan, for age and perceived handicap discrimination, retaliation for filing a complaint with the Ohio Civil Rights Commission ("OCRC"), intentional infliction of emotional distress, and for violations of provisions barring discrimination found in the Ohio Constitution. Appellant has presented two assignments of error for consideration on appeal that are:
 "Assignment of Error of No. 1: Even absent a reduction in pay, benefits or working conditions, an involuntary transfer to a `less prestigious' position which offers less job satisfaction constitutes an `adverse employment action'
 "Assignment of Error No. 2: A court improperly weighs the evidence when it narrows the scope of evidence to be considered in determining pretext"
First, we note that we, like all other courts in Ohio, are governed by the provisions of Civ.R. 56(B) when considering whether summary judgment can be granted in a case. Civ.R. 56(B) provides, in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
Keeping this standard of review in mind, we now consider the facts and the specific arguments presented by the parties in this case.
This case began on August 4, 1997, when appellant filed suit in the Lucas County Court of Common Pleas against his employer, the city of Toledo Division of Police, and two of his supervisors, Lt. Long and Lt. Eggert. Appellant alleged in his complaint that he was employed as a police officer in the city of Toledo for more than thirty years and that he was a field supervisor for more than twenty years.
Appellant alleged that he was temporarily off duty because of a medical problem. When he returned to work, he was assigned to be a desk sergeant because he was on light duty due to some medical restrictions. Appellant alleged that he fully recovered from his medical condition, and he asked to be returned to his previous assignment of working in the field as a supervisor of patrol crews.
Appellant alleged that his request was repeatedly denied because his supervisors discriminated against him on the basis of his age, or because they still perceived him to have a handicap. He also brought claims for: 1) intentional infliction of emotional distress; 2) unlawful retaliation because he filed a complaint for violations of his civil rights; and 3) for a violation of equal protection provisions found in the Ohio Constitution.
Appellees answered and denied all of appellant's allegations. Appellees subsequently filed a motion for summary judgment. Appellees argued that appellant could not meet his burden of proof for his claims because his assignment as a desk sergeant was not an adverse employment action and because the assignment was not made on the basis of his age or a perceived handicap.
Appellees said that the desk sergeant assignment was not an adverse employment action because appellant received the same pay and benefits as he had before, he was still considered a field supervisor, and the assignment was not due to his age or a perceived handicap. Appellees said appellant had no direct evidence of discrimination, and that he could not show two of the four required factors for proving discrimination through indirect evidence. Specifically, appellees said appellant could not show he was subjected to an adverse employment action and could not show that he was replaced in his old assignment by an employee who is not a member of the protected class to which appellant belongs.
In support of their motion for summary judgment, appellees provided affidavits from a captain and two lieutenants. Each of the affiants averred that appellant was still assigned to the field even though he had a desk job. Each of the affiants averred that assignments to the desk sergeant position are not disciplinary and that the desk sergeant is paid the same and has the same benefits as sergeants who are on patrol. Finally, they averred that many officers under the age of forty work as desk sergeants and many officers over the age of forty are assigned to work in the field supervising patrol crews.
Appellant filed a reply to the motion for summary judgment filed by appellees. Appellant said he had direct evidence that Lt. Long refused to return him to street patrol because of concerns about his age: a witness who heard Lt. Long tell Sergeant Heyneman that he was keeping appellant as a desk sergeant because appellant is too old to handle police work on the street. He argued that being assigned to desk sergeant duty was an adverse employment action because the desk sergeant assignment is generally considered distasteful and has been used for discipline. He also argued that the Supreme Court of the United States has ruled that it is not always necessary to show that you were replaced by someone who is not a part of the protected class to which you belong.
Appellant said he had a prima facie case for discrimination based upon a perceived handicap. He said even after his doctor cleared him from all medical restrictions, his supervisors would not reassign him to patrol because they continued to believe he had a medical condition that prohibited him from full duty.
Appellant also said he showed a prima facie case for retaliation for filing a civil rights complaint. He said that immediately after an article appeared in the Toledo Blade revealing that he had filed a complaint saying he was subject to age discrimination at his job, his supervisor started keeping personal notes about appellant's alleged misconduct and improper statements. Two months later, his supervisor transferred out. Just before the supervisor left, he filed disciplinary charges against appellant without first going through collective bargaining agreement discipline procedures. Appellant argued again that his assignment as a desk sergeant was an adverse employment action.
Appellant filed affidavits from a detective, a sergeant, and an officer of the Toledo Police Department. Each averred that the desk sergeant assignment is considered distasteful and that none of them had ever heard of a desk sergeant actually being called out to patrol duty during an emergency. The sergeant averred that when he was a SWAT commander and had desk sergeant duty, he could not leave the desk to respond to serve with the SWAT unit until another officer arrived to take his place at the desk. The detective averred that he knew of previous instances when the desk sergeant assignment was used to discipline an officer.
The officer averred that he was present at conversations between Lt. Long and Sergeant Heyneman where Lt. Long "indicated that he was keeping [appellant] off of the streets due to the fact that he (Lt. Long) felt that Sgt. Bryan was too old to work the streets." He also averred (as did the sergeant) that the desk sergeant assignment is generally rotated among all of the sergeants on a shift, or is assigned to the sergeant with the least seniority.
Appellee then filed a response, including an affidavit from Sergeant Heyneman. Sergeant Heyneman averred that he had never been told by Lt. Long that appellant was being kept off of street patrol because he was too old. Appellees argued that appellant still had not produced any direct evidence of discrimination. They said the affidavit from the officer was hearsay. Finally, they argued that appellant's proof that the desk sergeant assignment is disliked was not equivalent to proof that receiving that assignment was an adverse employment action.
Appellant took the depositions of the captain and the two lieutenants who filed affidavits in support of the motion for summary judgment filed by appellees. The depositions were filed in the trial court.
All three deponents agreed with appellant's contention that he was initially assigned to work as the desk sergeant at the Scott Park District Police Station because it was a position that accommodated his light duty status when he returned from medical leave. All of the deponents also agreed that even after appellant's doctor lifted all his work restrictions, his supervisors continued to require him to be a desk sergeant even though appellant repeatedly asked to return to his previous field command position.
The captain, who is in charge of the personnel section of the police department, was asked to explain what she remembered about appellant being off sick and then coming back to work. She replied:
 "He — he had a problem with his heart. I don't know exactly what the medical diagnosis was, but he had a problem with his heart. He was off sick for maybe a month, maybe a little bit longer, a little bit less. He provided a doctor's slip to the personnel section saying that he was going to be off totally disabled indefinitely.
 "Approximately a week later, we got a second doctor's slip from a different doctor saying that he could return to work full duty with no restrictions. And that had to send up a flag. You don't go from totally disabled indefinitely to full duty no restriction within a week's period so we had to request a physical with the city physician to determine whether or not he was fit for duty."
She testified that the city physician reported that appellant was not fully recovered, and still needed work restrictions. Pursuant to the procedures outlined in the collective bargaining agreement, the city and the police union agreed on a third physician to examine appellant. The third physician agreed with appellant's physician that he no longer needed work restrictions, so the city then returned appellant to full duty.
Lt. Long and Lt. Eggert testified that they were aware that appellant disliked the desk sergeant assignment. Both denied that their decisions to keep appellant as the desk sergeant for his shift even after his medical restrictions were lifted were motivated by his age or by any perception on their part that he had a handicap. Both said they kept him on the desk sergeant assignment because they had the managerial right to make work assignment decisions.
In addition, Lt. Long testified that before appellant took medical leave and returned on light duty, he had concerns that appellant was not performing all of the duties that were required for his job as a field supervisor. Specifically, he testified that he saw no evidence that appellant was going on calls with the patrol officers appellant was assigned to supervise. He testified that he believed there was a problem because he would monitor the radio transmissions, and when he heard calls to which appellant as a sergeant should respond, appellant never made any radio transmission to say he was on his way to the scene.
Lt. Long testified that he talked with appellant about the problem several times before appellant left for medical leave. He said that he was happier with the distribution of sergeants he had working in the field after appellant returned from medical leave. He therefore made a managerial decision that the most efficient distribution of sergeants on the shift was to leave appellant as the desk sergeant, even after he no longer needed light duty.
Lt. Long testified that in his opinion, appellant performed below par both as a field supervisor and as a desk sergeant. He said that appellant repeatedly made mistakes on the paperwork, and that he tried to keep working with appellant to bring his performance up to par. He said despite his continued efforts, appellant's performance did not improve.
He acknowledged being personally displeased when he learned from the Toledo Blade that appellant had filed a civil rights complaint alleging that appellant was the target of age discrimination. He said some of his friends called laughing about what they read in the paper. He said after he learned that appellant was making an age discrimination claim, he started documenting errors appellant made and statements appellant made. He said even though appellant was alleging others were discriminating against him because of his age, "The only age comments I ever heard were initiated by Sergeant Bryan." He said appellant seemed to "delight" in making remarks that he was doing police work when Lt. Long was still in diapers.
He said that he finally decided to bring disciplinary charges against appellant because even though he talked directly with appellant, appellant failed to properly list another police officer as off the payroll, rather than on sick leave. When Lt. Long asked appellant to see his daily report to ensure that the correction was made, appellant said he had already sent the report to headquarters. Lt. Long then told appellant to give him the report for the next day before it was filed. Appellant did not give him the report. When Lt. Long checked the records, he learned appellant had not made the required change. The record shows that appellant was suspended for two days as a result of the investigation of the disciplinary charges.
Lt. Eggert testified that he replaced Lt. Long as the commander in charge of appellant's shift, and that in his opinion, appellant performed below par as a desk sergeant. He testified that appellant made daily mistakes in his paperwork. When asked why he did not grant appellant's repeated requests for an assignment other than desk sergeant, he answered: "Because I didn't want to. I didn't have to. And it was my opinion that the most efficient part of the police department at that time was Sergeant Bryan to work the desk and my other Sergeants to work where they were working."
The trial court considered all of the above information and filed an opinion and judgment entry on December 11, 1998 in which it granted summary judgment to appellees. The trial court began by stating that there was a genuine issue of material fact regarding whether or not Lt. Long made statements that he was keeping appellant off of street patrol because appellant was too old. The trial court therefore said that it could assume that appellant presented sufficient direct evidence of age discrimination to meet his initial burden of proof that his employers had discriminatory intent. However, the trial court noted that appellant still had to show that he was discharged or subjected to an adverse employment action as a result of that discriminatory intent in order to establish a prima facie case of age discrimination.
The trial court acknowledged that an adverse employment action can be something less than a demotion or a discharge. The court said the evidence presented showed that some people find the desk sergeant position undesirable, but others enjoy the work and volunteer for the job. The court said the desk sergeant assignment is not a demotion, since a desk sergeant remains a field supervisor and can be required, if requested, to cover street patrol in an emergency. The court then concluded:
 "Based upon the foregoing, and upon viewing the evidence in a light most favorable to the Plaintiff, reasonable minds could only conclude that no genuine issue exists as to whether Plaintiff suffered any `adverse employment action' which is a necessary factor relative to Plaintiff's claim that he was the subject of age discrimination in violation of R.C. 4112.02(A). Further, since Plaintiff has failed to demonstrate that his assignment to Desk Sergeant rose to the level of an `adverse employment action,' his claim for `perceived' handicap must likewise fail."
The trial court then considered appellant's claim for unlawful retaliation. The court said that when the evidence was viewed in a light most favorable to appellant, it shows that appellant was disciplined formally only after he filed a civil rights violation complaint with the Ohio Civil Rights Commission. The court said that evidence can be "considered minimal circumstantial evidence of a causal connection."
However, the trial court found that appellees gave legitimate reasons for their actions. The legitimate reasons included that appellant had performed below par when he was assigned to supervise patrol crews and did not improve his performance even after he was repeatedly counseled about his shortcomings by Lt. Long. Also, appellant was eventually formally disciplined because his performance as a desk sergeant was below par and did not improve even after repeated counseling from his supervising officer.
The trial court then said that appellant did not respond:
 "with any evidence to cast doubt on the evidence that 1) prior to the filing of the separate DIF's, the Plaintiff failed to perform his job properly and was repeatedly counseled by Lieutenant Long and Lieutenant Eggert; 2) before the filing of the discrimination claim with the OCRC, as well as after the filing of the claim by Plaintiff, numerous attempts were made by the defendants to correct the Plaintiff's job performance in lieu of the filing of a DIF, and; 3) the Plaintiff was insubordinate and sanctioned accordingly."
The trial court concluded appellees' reasons for filing formal disciplinary charges against appellant were not a mere pretext for discrimination.
Finally, the trial court considered appellant's claims for intentional infliction of emotional distress and for violations of equal protection rights found in the Ohio Constitution. The court made the introductory statement for each claim:
 "Having found that reasonable minds can only conclude that Defendant's motion for summary judgment as to Plaintiff's First and Fourth Causes of Action: age and `perceived' handicap discrimination in violation of R.C. 4112.02(A), and Plaintiff's Second Cause of Action; unlawful retaliation in violation of R.C. 4112.02(I), must be granted; the Court therefore finds that the motion for summary judgment shall be granted as to Plaintiff's claim of * * *"
and granted summary judgment on both the intentional infliction of emotional distress claim and the claim for violations of equal protection provisions found in the Ohio Constitution. Appellant then filed this appeal.
In support of his first assignment of error, appellant argues that the trial court weighed conflicting evidence (something the trial court is not permitted to do when ruling on summary judgment) to reach the ruling that appellees did not subject appellant to an adverse employment action. Appellant says that when the evidence he presented is construed in a manner most favorable to him, he has at least shown a question of fact remains regarding whether or not his employer subjected him to an adverse employment action. He therefore says that the summary judgments granted to appellees on his age discrimination and perceived handicap claims must be reversed.
Appellees respond that appellant cannot show that his assignment as a desk sergeant was an adverse employment action. Appellees stress that appellant was not demoted, did not suffer any reduction in pay or benefits and was not fired.
Appellees also say one isolated and ambiguous statement is too irrelevant and prejudicial to support a finding of age or perceived handicap discrimination. Appellees argue that appellant has no direct evidence of discrimination, so appellant must meet the test for proving discrimination by indirect or circumstantial evidence. Appellees say the trial court correctly concluded that appellant cannot show he was subject to any adverse employment action because appellant's unhappiness with his assignment does not meet the standard of an adverse employment action. They also argue that appellant cannot show that he was replaced by someone who was outside of his protected class on his age discrimination claim because all of the sergeants who worked on his shift were forty years old or older.
We will first consider the arguments in view of appellant's claim for age discrimination. Rulings by the Supreme Court of Ohio in 1991 and in 1996 established that in Ohio there are two ways a plaintiff/employee can establish a prima facie case for age discrimination: 1) present direct evidence of age discrimination; or 2) present indirect evidence that meets a four part test. Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, paragraphs one and two of the syllabus; Kohmescher v. KrogerCo. (1991), 61 Ohio St.3d 501, syllabus. Even when a plaintiff/employee presents direct evidence of age discrimination, the plaintiff/employee must still show that he/she was fired or subjected to an adverse employment action in order to meet statutory requirements for an age discrimination claim. See Mauzyv. Kelly Services, Inc., 75 Ohio St.3d at 578, paragraph two of the syllabus; R.C. 4112.14(A).
Once the plaintiff/employee has established a prima facie case, either through direct evidence or through the four-part test for indirect evidence, the defendant/employer can raise a defense that the plaintiff/employee was fired or subjected to an adverse employment action for a legitimate, non-discriminatory reason. Once the defendant/employer articulates a nondiscriminatory reason for the action it took regarding the plaintiff employee, the burden shifts back to the plaintiff/employee to show that the defendant/employer's reason for the employment action is false, and that the real reason for the employment action was age discrimination. Gordon v. UniversalElectronics Inc. (Oct. 1, 1997), Summit App. No. 18071, unreported.
In this case, the trial court acknowledged that appellant presented direct evidence of age discrimination (the affidavit from the officer who said he heard conversations between Lt. Long and Sergeant Heyneman where Lt. Long "indicated that he was keeping [appellant] off of the streets due to the fact that he (Lt. Long) felt that Sgt. Bryan was too old to work the streets."), disputed by appellees, that created a genuine issue of fact. The trial court correctly concluded that the evidence was sufficient to show, for summary judgment purposes, that appellees had discriminatory intent because of appellant's age. The trial court also correctly concluded that appellant still had to show that he was subjected to an adverse employment action as a result of the discriminatory intent. See Mauzy v. Kelly Services, Inc.,75 Ohio St.3d at 578, paragraph two of the syllabus; R.C.4112.14(A).
Like the trial court, we reject the argument made by appellees that the direct evidence presented by appellant was inadmissible hearsay. If the statement of the officer is accepted as true, then the indications made by Lt. Long are party admissions. Evid.R. 801(D)(2). Accordingly, the trial court correctly concluded that a genuine issue of fact exists regarding whether Lt. Long made direct statements that he would not grant appellant's requests to return to street patrol because appellant was too old for that duty.
The question therefore becomes, did appellant present sufficient evidence to create a question of fact regarding whether he was subjected to an adverse employment action when his employers refused to return him to the field to supervise patrol crews. The trial court acknowledged that "employment actions short of actual discharge or demotion" can be considered adverse employment actions, but concluded that the circumstances in this case did not amount to an adverse employment action.
In reaching its conclusion, the trial court began by noting that some dispute existed in the evidence regarding whether or not the desk sergeant position was considered undesirable: appellant presented affidavits of other officers who said the desk sergeant position is considered by many to be "distasteful duty" but appellees presented deposition testimony showing that some officers enjoyed the desk sergeant duty and specifically asked for the assignment. The trial court discussed four other factors it found persuasive. First, the administrative duties of the desk sergeant "are included within the general description of a Toledo Police Sergeant's duties." Second, the assignment is not a demotion. Third, a desk sergeant is still a "field supervisor". Fourth, a desk sergeant can still be required, if requested, to cover the street.
We agree with the initial finding of the trial court that an adverse employment action can be something less than an employee being fired or demoted. However, for the following reasons we do not agree with the finding of the trial court that when all the evidence in this case is considered most favorably for appellant reasonable minds could only conclude that he was not subjected to an adverse employment action.
The Fifth Circuit Court of Appeals of the United States of America considered a discrimination claim brought by a sheriff's officer who was removed from his position as the head of a narcotics unit and transferred to a position as the head of the Communications/Dispatch division. Vojvodich v. Lopez (1995),48 F.3d 879, 883. The officer said he was discriminated against because of his political affiliations, which were different than those of the newly elected sheriff. He said his new position "offered less job satisfaction, fewer benefits, and that, in his view, the transfer was a `career setback.'" Id. at 883 note 2. The sheriff said the transfer was made for nondiscriminatory reasons and argued that the new position was equal in prestige to the position the officer held before the transfer.
The Fifth Circuit said the officer had presented sufficient evidence to defeat a motion for summary judgment. The court noted it had previously ruled that a retaliatory transfer to a less interesting and less prestigious position can be an adverse action even if the employee suffers no loss in pay. Id. at 887.
While the Vojvodich v. Lopez case did not involve an age discrimination claim, we find the analysis of what constitutes an adverse employment action persuasive. Applying that analysis, we find that appellant has presented enough evidence to show a prima facie case for age discrimination in this case.[1] He presented direct evidence of the employer's discriminatory intent because of his age. In addition, while it is true his assignment was not a demotion, did not result in a loss of pay and was actually a preferred assignment by some, appellant has presented evidence that shows the assignment was considered distasteful by most officers, that his supervisors were keenly aware that appellant in particular found the assignment distasteful, that the assignment was used as a form of discipline on some occasions, and that it was highly unlikely he would ever be asked to abandon the desk to cover the street.
We next consider this assignment of error in context of appellant's claim for perceived handicap discrimination. In Ohio, an employer is prohibited from discriminating against an employee due to the employee's handicap or due to an employer's perception that an employee has a handicap (even if no handicap actually exists). R.C. 4112.01(A)(13) and R.C. 4112.02. Like an age discrimination case, a plaintiff claiming handicap (or perceived handicap) discrimination can prove a prima facie case through direct evidence, or through a three part test for a circumstantial evidence case. The three part test is 1) the employee is handicapped (or is perceived as handicapped); 2) an adverse employment action is taken by the employer because of the employee's handicap (or perceived handicap); and 3) the employee was able to safely and substantially perform the essential functions of the job (with reasonable accommodations if the employee really is handicapped). See Degnan v. Goodwill Industriesof Toledo (1995), 104 Ohio App.3d 589, 595.
Appellees challenged appellant's perceived handicap case only on the basis that appellant was not subjected to an adverse employment action. Appellant responded only to that charge, and the trial court considered only that element of the claim when it ruled that appellees were entitled to summary judgment on appellant's claim for perceived handicap discrimination. Therefore, that is the only element under consideration on appeal: did appellant show enough evidence to create a material question of fact regarding whether he was subjected to an adverse employment action in his perceived handicap discrimination claim? The analysis applied above to decide whether a material question of fact remains regarding whether appellant was subjected to an adverse employment action in his age discrimination claim is equally applicable to decide whether a material question of fact exists regarding whether appellant was subjected to an adverse employment action for a perceived handicap discrimination.
For the same reasons discussed above, therefore, we find that appellant did show a material question of fact remains regarding whether he was subjected to an adverse employment action. We end our analysis there, without proceeding to the question of whether appellees gave legitimate reasons for their actions or whether appellant showed those reasons were actually just a pretext for discrimination, because those questions were not raised or considered in the trial court.
Appellant's first assignment of error is well-taken. The summary judgments granted by the trial court to appellees on appellant's claims for age and perceived handicap discrimination on the sole basis that appellant failed to show a material question of fact remains regarding whether he was subjected to an adverse employment action are reversed.
In support of his second assignment of error, appellant argues that the trial court improperly weighed evidence when it granted appellees summary judgment on his claim that he was subjected to discipline in retaliation for filing a civil rights violation claim with the OCRC, a violation of R.C. 4112.02(I). The trial court ruled that appellant did not show that the reasons given by appellees for disciplining appellant were merely a pretext for retaliation.
Appellant says the trial court conducted a trial on the merits to reach its ruling that he did not show the reasons given by appellees for disciplining him were a pretext. He says the trial court chose to disregard evidence he presented to show the reasons given by appellees for disciplining him were a pretext, including: 1) the admission by Lt. Long that he started keeping personal notes on mistakes appellant made after Lt. Long learned through a newspaper article that appellant filed a complaint with the OCRC; 2) the lack of any discipline (private consultations between Lt. Long and appellant do not qualify as discipline) of appellant prior to the time he filed his complaint with the OCRC; 3) proof that appellant's paperwork error rate was lower than the rate for desk sergeants as a whole in a study conducted by the personnel division for the Toledo Police Department yet he was the only one ever disciplined for making paperwork errors; 4) proof that Lt. Long voiced a discriminatory reason for keeping appellant at the desk (appellant was too old to serve on the street) and 5) proof that the desk sergeant position has been used as discipline in the past and is largely considered a distasteful assignment. Appellant says:
 "Despite this extensive conflicting evidence, the trial court focused solely on the adequacy of Sgt. Bryan's blow-by-blow response to the counselings and disciplinary charges. The trial judge overtly picked and chose among the evidence to make her decision; this is improper weighing of the evidence and summary judgment was converted to a `trial by affidavit.' Summary judgment cannot be a substitute `trial by affidavit;' [sic] under Civ.R. 56, there is no margin for disposition of fact issues, and summary judgment must not be substituted for trial."
Appellees filed no response to appellant's second assignment of error. Instead, appellees argued that they were entitled to summary judgment on all of appellant's claims because the record does not support a finding that appellant was subjected to an adverse employment action.
As we have already ruled in response to the first assignment of error, a material question of fact does remain regarding whether appellant was subjected to an adverse employment action. Therefore, appellees' response to appellant's argument is not persuasive.
The record shows that the trial court ruled that even assuming that appellant presented a prima facie case for his retaliation claim, appellees were entitled to summary judgment on the claim because appellant did not show the reasons given by appellees for disciplining appellant after he filed a complaint with the OCRC were pretexts and the real reason for the discipline was retaliation for him exercising his legal rights. The trial court said appellees "articulated legitimate reasons for their actions." The reasons recounted by the trial court included: Lt. Long's assertion that he had to repeatedly counsel appellant before appellant left on medical leave for failing to respond on the radio to show he was aware of certain calls and was going to the scene to supervise the patrol crews; testimony from Lt. Long and Lt. Eggert that appellant's performance as a desk sergeant was below par and that his performance did not improve despite repeated counseling from them; Lt. Long's testimony that he filed a disciplinary charge against appellant because appellant was insubordinate and did not follow a direct instruction from Lt. Long to fix a paperwork error and to provide him with a copy of the report.
The trial court concluded:
 "Plaintiff has not offered a scintilla of evidence to dispute the facts as testified to individually by Lieutenant Long and Lieutenant Eggert relative to the `below average' job performance of the Plaintiff and the voluminous attempts to correct is performance prior to the filing of the separate DIF's.
 "When viewing the evidence in a light most favorable to Plaintiff, reasonable minds can only conclude that the defendants have produced legitimate nondiscriminatory reasons for the `adverse action.' The law is clear that if such evidence is produced, the Plaintiff's claims must fail unless the Plaintiff demonstrates that the employer's articulated reasons are merely a pretext for discrimination. In the case sub judice, Plaintiff has not responded with any evidence to cast doubt on the evidence that 1) prior to the filing of the separate DIF's, the Plaintiff failed to perform his job properly and was repeatedly counseled by Lieutenant Long and Lieutenant Eggert; 2) before the filing of the discrimination claim with the OCRC, as well as after the filing of the claim by Plaintiff, numerous attempts were made by the defendants to correct the Plaintiff's job performance in lieu of the filing of a DIF, and; 3) the Plaintiff was insubordinate and sanctioned accordingly. Therefore, when viewing the evidence in a light most favorable to the Plaintiff, reasonable minds can come to but one conclusion and that is that the employer's articulated reasons for the filing of the DIFs were not merely a pretext for discrimination."
Appellant concedes that he made some paperwork mistakes while working as a desk sergeant, and he does not deny that he was repeatedly counseled about those mistakes by his supervisors. However, appellant contends that he has shown that those errors are not generally the subject of disciplinary charges, that charges were only filed against him after his supervisor learned he filed a complaint with the OCRC, and that his error rate was actually lower than the error rate the administration discovered when it did a survey of the work done by other desk sergeants from the department.
We agree with appellant that he has presented sufficient evidence to create a material question of fact regarding whether the reasons given by appellees for disciplining appellant were merely a pretext for discrimination. While appellant did make some errors and he was counseled about those errors by his supervisors, when the evidence is viewed in a light most favorable to appellant, reasonable minds could conclude that appellees chose to make an issue of the mistakes only after they learned appellant filed a complaint with the OCRC and that other desk sergeants who made more mistakes were not similarly treated in that they were not subjected to discipline for their mistakes. See Smith v. Five Rivers Metroparks (Sept. 17, 1999), Montgomery App. No. 17744, unreported. Appellant's second assignment of error is well-taken.
The summary judgments granted to appellees by the Lucas County Court of Common Pleas on appellant's claims for age and perceived handicap discrimination and retaliation are reversed. The remaining summary judgments for appellees on appellant's claims for intentional infliction of emotional distress and for violations of equal protection provisions found in the Ohio Constitution were not challenged by appellant on appeal, and they therefore stand. This case is remanded for further proceedings consistent with this decision. Appellees are ordered to pay the court costs of this appeal.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
PETER M. HANDWORK, J., MELVIN L. RESNICK, J., and RICHARD W. KNEPPER, P.J., concur.
[1] We have also considered similar reasoning employed by other federal courts in other types of discrimination cases, including sex discrimination (Vergara v. Bentsen (U.S. Dist. 1994), 868 F. Supp. 581 — unjustifiable negative performance evaluations included in work file without notice to employee who had right to respond can be adverse employment action), and retaliation (Yartzoff v. Thomas (C.A.9, 1987), 809 F.2d 1371 — transferring job duties and undeserved performance ratings following complaint for labor violations can be an adverse employment action).