# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-50879

CHARLES M. GROGAN; MARY J. FARLEY,

> Plaintiffs - Appellants

v.

EDDY LANGE, in his individual and official capacity as Sheriff of Bell County; BELL COUNTY, TEXAS,

> Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:13-CV-91

Before JONES and HAYNES, Circuit Judges, and CRONE*, District Judge.

PER CURIAM:*

Plaintiffs Charles Grogan ("Grogan") and Mary Farley ("Farley") appeal the district court's grant of summary judgment in favor of defendant Eddy Lange ("Lange") and Bell County on Plaintiffs' First Amendment retaliation claims. Defendants failed to show any form of disruption to the Bell County Sheriff's Office's ability to provide services to the public based on Grogan's and

---

* District Judge of the Eastern District of Texas, sitting by designation.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50879

Farley's political support for the Sheriff's opponent.  Therefore, we REVERSE the judgment and REMAND for further proceedings.

BACKGROUND

Plaintiffs Grogan and Farley were sheriff's deputies who served, respectively, as jail administrator and assistant jail administrator of the Bell County jail.  Upon the resignation of Grogan's boss, Bob Patterson, in 2011, Grogan was promoted from the position of Lieutenant and assistant jail administrator to Major and jail administrator by former Sheriff Dan Smith.  Farley, meanwhile, had served as Lieutenant for fourteen years.

As jail administrator, Grogan was responsible for overseeing the jail's personnel and operations.  He could appoint courtroom bailiffs, transfer inmates to other facilities, and interface with external vendors.  He oversaw a staff of 200 employees and helped craft the jail budget.  However, he could not terminate an employee without the Sheriff's approval or sign contracts with vendors.  Additionally, Grogan did not present the jail budget to the county commissioners; the Sheriff presented the budget.

Farley's responsibilities, as Grogan's deputy, were more limited.  She was responsible for overseeing housing security, scheduling, and jail standards, and handling inmate grievances.  She also oversaw the purchase of food and supplies.  She neither signed contracts nor participated in the budget-making process.

In 2012, Eddy Lange, Bob Patterson, and others ran in the 2012 Republican Primary for Sheriff of Bell County.  A runoff election ensued, with Lange and Bob Patterson competing for the Republican nomination.

In February 2012, Plaintiffs attended a candidate forum sponsored by the Republican Women's Association.  Lange observed Plaintiffs sitting at a table with his opponent, Bob Patterson, and inferred that they were supporting Patterson's candidacy.  Grogan and Farley, in fact, did support Bob Patterson,

No. 14-50879

but neither Plaintiff contributed money to Bob Patterson's campaign. Both, however, posted "Patterson for Sheriff" signs in their homes' front yards. Plaintiffs also attended a fundraiser for Patterson hosted by the incumbent Sheriff. Lange's supporters monitored the parking lot at the event in order to record attendees' license plate numbers. They reported to Lange that Plaintiffs had attended the fundraiser, information that was confirmed by photos of the event posted on Facebook.

Chief Deputy Jack Meredith, a supporter of Lange's, warned Grogan to stay away from Patterson. Despite these warnings, Grogan continued to display his Bob Patterson yard sign.

In September 2012, Lange requested a meeting with Grogan after winning the Republican primary. Lange told Grogan that he had "always appreciated the work – the way that [he and Grogan] had been able to work together." However, Lange's "heart just dropped" when he saw Grogan supporting Bob Patterson. Lange ultimately said to Grogan, "[t]here is no way [they] are going to be able to remain in those positions." He gave Grogan an ultimatum: either accept a demotion from Major to Lieutenant or resign. The demotion in rank entailed a $30,000 decrease in pay, which was equal to roughly 30% of Grogan's salary. A demotion would also require Grogan's removal as administrator of the jail; instead, he would be appointed to Farley's former position, assistant jail administrator and second-in-command.

Lange held a similar conversation with Farley, expressing his dismay with her attendance at the Republican Women's Association fundraiser for Patterson. Farley was given the same ultimatum, with the demotion being from Lieutenant to Sergeant. In response to Farley's assertion that she could continue performing her job responsibilities if Lange was Sheriff, he said, "[t]hat's just politics."

3

No. 14-50879

On January 2, 2013, after being sworn in as Sheriff, Lange met with both Grogan and Farley to reiterate the previous ultimata. The plaintiffs opted to resign rather than take the demotions.

Lange never asked Grogan or Farley whether either could continue to perform the duties of jail administrator and assistant administrator, respectively, under Lange's supervision. Lange testified that neither Plaintiff did anything disruptive to the administration of the jail, called him names, or made derogatory comments, nor were they disrespectful or insubordinate in any manner. He was also not aware of any campaigning or political activities by Plaintiffs during work hours. When asked why Lange was unable to trust Plaintiffs, he responded that they "[s]upported the other side." Finally, Lange testified that there was nothing in Plaintiffs' job descriptions that required political loyalty as a job duty or requirement. Moreover, Lange testified that Grogan's replacement as jail administrator, Nancy Botkin, was never asked whether she supported Lange.

Shortly after resigning, Grogan and Farley brought suit against Lange and Bell County pursuant to 42 U.S.C. § 1983 for violations of their right to free speech. Defendants filed a joint consolidated motion for summary judgment, arguing that Lange had an absolute right to terminate or demote policymakers based on political affiliation. The district court granted the motion for summary judgment, dismissing all claims because of Grogan's and Farley's status as policymakers. Plaintiffs timely appealed following the dismissal.

## STANDARD OF REVIEW

This court reviews a summary judgment by examining "the record under the same standards which guided the district court." *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). Summary judgment is appropriate when no genuine issue of material fact exists, and the movant is entitled to

4

No. 14-50879

judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S. Ct. 2548, 2552–53 (1986). In determining whether the grant was proper, we view all fact questions in the light most favorable to the non-movant. Questions of law are reviewed de novo. *Walker*, 853 F.2d at 358.

## DISCUSSION

At the summary judgment stage, the movants must prove that there are no genuine issues of material fact and that at least one element of plaintiff's First Amendment retaliation claim must fail as a matter of law. "As the district court recognized, a First Amendment retaliation claim in the employment context has four elements: (1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc). The defendants concede all but one element, and argue that the plaintiffs' First Amendment rights do not outweigh the county's interest in promoting the efficient provision of public services.

The factual scenarios analyzed under the third element of a retaliation claim "locate themselves on a spectrum." *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 704–05 (5th Cir. 1998). Some cases are located on an extreme end of the spectrum where the employee prevails with "little, if any, weighing." *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 993 (5th Cir. 1992). One such factual scenario occurs in political affiliation cases. The Supreme Court has held that "the First Amendment forbids" firing, threatening to fire, transferring, or recalling public employees based on political affiliation, "unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64, 110 S. Ct. 2729, 2732 (1990). That is true even for some employees who hold policymaking positions. *Vojvodich v.*

5

*Lopez*, 48 F.3d 879, 884 (5th Cir. 1995). Where the hiring authority has not alleged that political affiliation is an appropriate requirement for the position, such cases are on that part of the spectrum where no balancing is needed, because the employee's rights are not counterbalanced by public necessity. *Kinsey*, 950 F.2d at 993.

Where the factual scenario does not place a case on an extreme end of the spectrum, "we have concluded that *Connick/Pickering* balancing constitutes the appropriate inquiry" for determining whether First Amendment rights overcome the county's interest in effective provision of public services. *Brady*, 145 F.3d at 705. *Connick/Pickering* balancing includes a non-exhaustive list of factors: "(1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers." *Connick v. Myers*, 461 U.S. 138, 151–53, 103 S. Ct. 1684, 1692–93 (1983); *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir.1992). In many instances where an employee is a policymaker, the government's interests in efficiently providing services and ensuring unity of policymaking more easily outweigh the employee's interests. *Brady*, 145 F.3d at 708. We reiterate the "oft repeated warning that because of the wide variety of situations in which this issue might arise, each case should be considered on its particular facts." *Id*. at 885.

The indispensable predicate to balancing, however, is evidence from the public employer of actual or incipient disruption to the provision of public services. *Vojvodich*, 48 F.3d at 887. Without such evidence, "there simply is no countervailing state interest to weigh against the employee's First

Amendment rights." *Id.* at 886. We apply these general principles to each Plaintiff's claim.

Turning to Grogan, the district court erred in holding that his First Amendment retaliation claim failed as a matter of law. The court determined that Grogan was a policymaker and, based on that status alone, held that the balancing of interests was in the county's favor. This was partially erroneous. We agree that Grogan was a policymaker. His responsibilities clearly involved discretion and went beyond "ministerial competence," as he managed a staff of over 200 and helped craft the jail's budget. *Wiggins v. Lownders Cnty.*, 363 F.3d 387, 390 (5th Cir. 2004). It is also generally true that the government's interests more easily overcome a policymaking employee's exercise of First Amendment rights. *Brady*, 145 F.3d at 708. However, this preference does not always apply in the political affiliation context because a policymaker whose role does not necessitate political allegiance can never be fired or transferred for lacking political affiliation with the elected officials. *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008); *Kinsey*, 950 F.2d at 994. The district court failed to inquire whether Grogan's role as a policymaker necessitated an allegiance to Lange. *See Brady*, 145 F.3d at 704. Even assuming, however, that it was acceptable to require Grogan's political allegiance to Lange, the motion for summary judgment should still have been denied.

Here, the Defendants have not alleged that Grogan's support of Bob Patterson interfered with the office's ability to provide services to the public. On the contrary, Lange stated that he appreciated the way he and Grogan had always been able to work together and that his decision to issue ultimata to Grogan and Farley was "just politics." Indeed, Lange was comfortable enough with Grogan's presence that he was willing to retain Grogan on his staff, albeit in a different capacity. Defendants assert that Lange, having won the election,

has the authority to fire employees for "supporting the other side" and to bring in his own employees. But "[t]o the victor belong only those spoils that may be constitutionally obtained." *Rutan*, 497 U.S. at 64, 110 S. Ct. 2731. Lange can only fire employees for political allegiance if the lack of political allegiance would create a disruption in providing the public with services. Here, the Defendants have not attempted to establish any interference with the operations of the sheriff's office.

In *Vojvodich*, a case closely on point involving a sheriff's deputy, this court explained the need for a public employer to provide evidence of disruption in order for a court to weigh a plaintiff's interests against those of the defendant. *Vojvodich*, 48 F.3d at 886. We assumed the plaintiff in *Vojvodich* was a policymaker but ultimately held that the defendant's failure to allege that the plaintiff's activities would affect the sheriff's office's ability to provide services deprived the court of a "countervailing state interest to weigh against the employee's First Amendment rights." *Vojvodich*, 48 F.3d at 886. Summary judgment for the defendant was reversed.

The district court should not have granted summary judgment for Defendants, because Lange's own testimony essentially disavowed any disruption of the office's ability to provide services stemming from Grogan's support of his opponent. As such, there are no public interests to weigh against Grogan's First Amendment interests, even if Grogan is a policymaker. Defendants have not established that an element of Grogan's claim fails as a matter of law.

Based on the same assumptions and lack of evidence, Defendants are also not entitled to summary judgment against Farley. Alternatively, the district court erred because Farley was not a policymaker and, therefore, could not be fired solely because of her political allegiance. *Rutan*, 497 U.S. at 64. Unlike Grogan, who held the highest jail administrative position, her duties

No. 14-50879

were limited by her supervisors. *Wiggins*, 363 F.3d at 390. Her position was ministerial, as it included executing the policy goals and decisions of others.

For the foregoing reasons, we **REVERSE** the judgment and **REMAND** for further proceedings.